**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lawrence LYKES, Defendant–
Appellant.**

**No. 02–5119.**

United States Court of Appeals,
Sixth Circuit.

Aug. 7, 2003.

Before MARTIN, Chief Circuit Judge, KRUPANSKY, and COLE, Circuit Judges.

KRUPANSKY, Circuit Judge.

Defendant–Appellant, Lawrence Lykes ("Lykes") has appealed from a final judgment in which a jury convicted him on one count of carjacking and on the use of a firearm during the commission of a crime. Lykes contended that: the district court erroneously concluded his two carjacking offenses could be joined; the district court erroneously concluded his guarantee of a speedy trial was not violated; the district court abused its discretion when it submitted jury instructions on flight and stolen property; and, the court committed clear error in applying sentencing enhancements

for abduction and reckless endangerment. The defendant's arguments are not persuasive and the decision of the district court is affirmed.

## I. BACKGROUND

### A. Count One–Evidence in the Raymond Bowling Carjacking

During the morning hours of October 30, 1998, Lykes went to the apartment of David Chance in Knoxville, Tennessee. Lykes and Chance had known each other for a number of years, but on this occasion appellant forced Chance from his apartment at gunpoint and, several hours later, left him at a shopping mall. Prior to forcing Chance from the apartment, Lykes stole Chance's wallet, containing his driver's license, and Chance's barbering scissors.

Later that evening, taxi driver Raymond Bowling was called to pick up Lykes in Knoxville. Bowling was driving a 1991 Cadillac DeVille and took Lykes to the same location he had taken him "two or three times" previously, namely, the corner of Vermont and Testerman streets in Knoxville. While Bowling testified that he recognized his "fare" as the person he had previously carried, he could not positively identify that person in court as the appellant. Bowling described the person as wearing a tan, two-piece suit. When Bowling arrived at Vermont and Testerman, Lykes brandished Chance's barber shears and thrust them into Bowling's side while he pushed the driver out of the car. As Bowling rolled onto the road, Lykes climbed into the driver's seat and sped away with the taxicab.

Nearly a month later, on November 25, 1998, the taxicab was recovered in Columbia, South Carolina, after a high-speed chase. The driver of the vehicle, a black male, abandoned the vehicle in a median

strip after blowing a tire and was not apprehended or identified. Several items found in the vehicle, however, indicated that Lykes had, at least, been in possession of the vehicle at some point. Officers discovered David Chance's driver's license and barbering shears, a tan two-piece suit, a check made payable to the Lykes, a photograph of appellant's daughter, ammunition, a handgun, and several pieces of clothing. Bowling later testified that none of those items belonged to him.

### B. *Count Two—Evidence in the June Arnold Carjacking*

In the evening hours of December 31, 1998, the appellant again took a taxi to the intersection of Vermont and Testerman streets in Knoxville, visiting the nearby apartment of Lisa Jones. Lykes then accompanied Jones and her roommate June Arnold to the Star Dust Lounge to celebrate New Year's Eve. Arnold drove the three to the nightclub in her rented 1997 gold-colored Pontiac Sunfire, which Lykes refused to exit upon the trio's arrival at the club's parking lot.

Arnold and Jones left the appellant in the car while they joined others in the Star Dust. A short time later, when Arnold returned to the car, Lykes asked for her keys so that he might listen to the radio; Arnold refused appellant's request and returned to the club. Some ninety minutes later, Arnold again exited the club for some "fresh air" and Lykes again asked for the car keys. Arnold continued to refuse, and the appellant became adamant, brandishing a gun that he discharged next to Arnold's ear. Fearing for her safety, Arnold then threw the keys at the appellant and ran inside the club to call the police.

In the meantime, Lisa Jones entered the parking lot intending to tell Lykes that she and Arnold would take him wherever he needed if he would return the keys to Arnold. When Jones reached the vehicle, however, appellant grabbed her and forced her into the vehicle and pushed her over to the passenger's position of the seat. Appellant climbed into the car, cutting off Jones's exit and telling Jones he was going to South Carolina as he drove off. Jones protested her abduction and, when Lykes slowed to enter the freeway, she opened the door and jumped out, sustaining minor injuries. Jones then made her way back to the Star Dust Lounge on foot.

Nearly three weeks later, in the early morning hours of January 20, 1999, South Carolina Highway Patrol officers received a radio dispatch regarding an armed robbery call at an interstate highway rest-stop. Two officers responded in separate vehicles and, upon arrival, began checking the cars and their occupants. Approaching a Pontiac Sunfire, one officer observed a gun between the car's two front seats, which the occupant, appellant Lykes, reached for as he then immediately sped off toward the interstate.

As the officers gave chase, averaging speeds of 100 miles per hour, Lykes crossed the interstate median and began traveling north in the southbound lanes, turning his lights on in the early morning darkness only as oncoming vehicles approached. In the course of the pursuit, Lykes faced two southbound tractor-trailers driving side-by-side. Appellant responded by veering off into the median where he lost control of the vehicle which crossed back into the northbound lanes of the interstate and became airborne. As the vehicle crashed on the embankment below the interstate, Lykes was thrown from the car, and the Sunfire burst into flames. Reaching the scene, the officers dragged the appellant to safety as the heat of the burning vehicle ignited rounds of ammunition left in the car. One of the

officers' in-car cameras captured these events on videotape, and the vehicle, driven by Lykes, was later identified as the same Pontiac Sunfire taken from June Arnold on January 1, 1999.

### C. *Evidence of appellant's state custody status*

South Carolina authorities arrested Lykes at the scene of the accident on January 20, 1999, and detained him pending trial on several outstanding warrants. Lykes pled guilty to one of the state charges stemming from the high-speed chase and was sentenced in November 1999 to three years incarceration. However, the appellant remained in state custody pending the resolution of drug charges from 1998. After numerous delays stemming from Lykes' requests to change attorneys, the appellant pled guilty to the drug charges and remained in the custody of the state of South Carolina pending sentencing, which occurred on January 2, 2001. Lykes received a term of imprisonment of forty-two months.

Once the government learned of appellant's sentencing on state drug charges, it filed a petition for writ of *habeas corpus ad prosequendum* on February 28, 2001, to bring the appellant to the Eastern District of Tennessee to face federal charges. In March 2001, Lykes entered a plea of not guilty to the three-count indictment returned by a federal grand jury in May 1999. Counts One and Two charged Lykes with separate carjacking offenses in violation of 18 U.S.C. § 2119. Count One charged that on or about October 30, 1998, Lykes stole a 1991 Cadillac from Taxi driver Raymond Bowling with intent to cause death and serious bodily injury. Count Two charged that shortly after New Year's Eve January 1, 1999, Lykes stole a Pontiac Sunfire belonging to June Arnold. Count Three charged the appellant with using

and carrying a firearm during and in relation to the carjacking of the Sunfire and discharging the firearm during the commission of that carjacking in violation 18 U.S.C. § 924(c).

The appellant filed several pretrial motions, including a motion for dismissal of the indictment based upon prejudicial pretrial delay, and a motion to sever the two counts of carjacking. The district court adopted the magistrate's report and recommendation denying Lykes's motions.

After the jury returned a guilty verdict on Counts Two and Three, Lykes filed a motion for judgment of acquittal based on his pre-trial allegations and also asserted improper jury instructions. The district court denied Lykes's motions.

In sentencing Lykes, the district court adopted the presentence report's ("PSR") recommended four-level sentencing enhancement for the abduction of Lisa Jones, and two-level increase for reckless endangerment during the high-speed chase that ended in appellant's arrest. Lykes filed objections to these recommended enhancements, which the district court overruled at the sentencing hearing. On January 14, 2002, Lykes was sentenced to 120 months imprisonment on Count Two and 120 months imprisonment on Count Three, to be served consecutively. The appellant filed this timely notice of appeal.

## II. *DISCUSSION*

### A. Severance of the two carjacking offenses.

█ A district court's denial of severance is reviewed for an abuse of discretion. *United States v. Marks*, 209 F.3d 577, 584 (6th Cir.), *cert. denied*, 531 U.S. 882, 121 S.Ct. 195, 148 L.Ed.2d 136 (2000). Ordinarily, absent a showing of clear abuse of discretion and a miscarriage of justice, the trial judge's discretion is given great def-

erence. *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir.1990). To prove an abuse of discretion, the defendant must demonstrate that he was prejudiced. *United States v. Blakeney*, 942 F.2d 1001, 1011 (6th Cir.1991).

The appellant has urged this panel to find that the district court abused its discretion in denying the motion for severance of the two counts of carjacking, contending that the incidents involved wholly separate witnesses and lines of defense. The appellant has also argued that the joinder caused undue prejudice.

Rule 8(a) of the Federal Rules of Criminal Procedure controls the joinder of charges in an indictment, which states:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are *of the same or similar character*, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

FED. R.CRIM. P. 8(a) (emphasis added). *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir.1987) (discussing Rule 8(b) joinder of defendants and offenses).

As this Court has noted in *Swift*, Fed. R.Crim.P. 8 broadly provides for joinder of offenses or defendants "because of the protection Rule 14 affords against unnecessary prejudicial joinder." *Id.* at 322. Federal Rule of Criminal Procedure 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information ... the court may order an election or separate trials of counts, grant a severance of defendants

or provide whatever other relief justice requires.

FED. R.CRIM. P. 14.

Accordingly, if the counts remained joined for trial under Rule 8(a), as they were in the instant case, the appellant has the burden of proving prejudice under Rule 14. To meet this burden, the appellant must prove a serious risk of compromise to his specific trial rights and not mere disadvantage. *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Simply proving that the appellant would have a greater chance of acquittal if the counts were tried separately does not provide a sufficient reason for severance. *See United States v. DeFranco*, 30 F.3d 664, 669–70 (6th Cir.1994) (the defendant must show "substantial," "undue," or "compelling" prejudice).

The evidence at trial demonstrated that the carjackings were, indeed, of the same or similar character and that the evidence was inextricably intertwined. Bowling testified that he had driven the individual who had stolen his taxicab to the intersection of Vermont and Testerman on several occasions. That intersection was the site of Lisa Jones's apartment, the individual Lykes abducted when he carjacked June Arnold's vehicle on January 1, 1999. During both offenses, the appellant brandished a deadly weapon, albeit different weapons. Further, both vehicles were carjacked in Knoxville for the purpose of facilitating Lykes's travel to Columbia, South Carolina, where both vehicles were subsequently recovered after high-speed chases. Finally, David Chance, Lisa Jones and June Arnold all testified to the type of clothing usually worn by the defendant, which was the same type of clothing found in Bowling's recovered taxicab.

Moreover, despite the relevance of some evidence to all three counts, the district court instructed the jury to consider the

evidence as to each count separately to avoid any potential prejudice. The jury clearly followed the court's instructions because they acquitted the appellant on Count One, which alleged the first carjacking offense, and convicted him on the second carjacking offense charged in Count Two. In its post-trial memorandum and order denying appellant's motion for a new trial, the district court noted that appellant's acquittal of Count One made "any argument that he was prejudiced difficult, if not impossible, to support." This court agrees.

### B. Appellant's due process claims.

This Court reviews *de novo* the constitutional question of whether the defendant was denied a speedy trial in violation of the Sixth Amendment. *United States v. Brown,* 169 F.3d 344, 348 (6th Cir.1999). The district court's factual findings are reviewed for clear error. *United States v. Marks,* 209 F.3d 577, 586 (6th Cir.), *cert. denied,* 531 U.S. 882, 121 S.Ct. 195, 148 L.Ed.2d 136 (2000).

■ In the first instance, Lykes has contended that the district court erred in denying his pretrial motion to dismiss the indictment for the government's failure to provide him with a speedy trial, asserting that § 3161(j) of the Speedy Trial Act[1] and

Rule 48(b) of the Federal Rules of Criminal Procedure[2] require dismissal where there is prejudicial, post-indictment delay.

As the district court properly found, at the time the federal indictment was returned against Lykes on May 19, 1999, he was not serving a term of imprisonment but rather remained in state custody awaiting the disposition of pending state charges. However, plea negotiations concerning appellant's felony drug offenses took more than a year because, during the process, Lykes switched attorneys at least three times. The government remained in frequent contact with the South Carolina officials so that when the United States learned of appellant's sentencing in December 2000, it filed for a writ of *habeas corpus ad prosequendum* on February 28, 2001.[3] The appellant has not demonstrated, as he must, that the elapsed two-month period resulted in prejudice. *See United States v. Grosshans,* 821 F.2d 1247, 1253 (6th Cir.1987); *see also United States v. Glasgow,* 790 F.2d 446, 450 (6th Cir.1985).

■ In the second instance, evaluating whether the appellant's constitutional speedy trial rights had been violated, the court below considered the factors set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Those

---

1. Section 3161(j) of the Speedy Trial Act states:

   If the attorney for the Government knows that a person charged with an offense *is serving a term of imprisonment* in any penal institution, he shall promptly
   (A) undertake to obtain the presence of the prisoner for trial; or
   (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.
   18 U.S.C. § 3161(j) (emphasis added).

2. Federal Rule of Criminal Procedure 48(b) provides:

The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
(1) presenting a charge to a grand jury;
(2) filing an information against a defendant; or
(3) bringing a defendant to trial.
Fed.R.Crim.P. 48(b).

3. Special Agent Smith recalled that he contacted the South Carolina Department of Corrections in late December 2000 to learn that Lykes had been sentenced to a term of forty-two months imprisonment. The PSR discloses that the defendant was not actually sentenced on these charges until January 2, 2001.

factors include: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his rights; and (4) prejudice to the defendant. *Id.* at 530–32. The "threshold" consideration, pursuant to this court's jurisprudence, remains the length of delay. *United States v. Thomas,* 167 F.3d 299, 304 (6th Cir.1999). If the delay is not considered sufficient to result in prejudice toward the defendant, there exists no need to consider the remaining *Barker* factors. *Id.* This court affirms the lower court's finding that a two-month delay in bringing the appellant before the federal bench did not violate his right to a speedy trial pursuant to the Sixth Amendment or Rule 48 of the Federal Rules of Criminal Procedure. *United States v. Schreane,* 331 F.3d 548, 555 (6th Cir.2003) (considering a fifteen month delay while defendant remained in state custody on pending charges as proper under *Barker* and concluding that "waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay") (*quoting United States v. Grimmond,* 137 F.3d 823, 828 (4th Cir.), *cert. denied,* 525 U.S. 850, 119 S.Ct. 124, 142 L.Ed.2d 100 (1998)).

Even upon reviewing the other *Barker* factors, the appellant cannot prevail. First, the burden of proving a delay must be carried by the defendant and not by the government. In the instant case, the necessity of awaiting the disposition of state charges against the appellant does not satisfy the burden. Second, even if, under the third *Barker* factor, the appellant had asserted his rights to a speedy trial, which

he did not, he would have remained in state custody regardless of whether he had been notified of the federal charges pending against him. Finally, the appellant did not provide any evidence proving that substantial prejudice resulted from the delay. Because the appellant remained in state custody, beginning with his arrest in January 1999, he cannot demonstrate any oppressive pretrial incarceration.

## C. Jury instructions

■ This Court reviews the district court's jury instructions for abuse of discretion. *United States v. Beaty,* 245 F.3d 617, 621 (6th Cir.), *cert. denied,* 534 U.S. 895, 122 S.Ct. 216, 151 L.Ed.2d 154 (2001). Reversal is necessary only when the instructions have failed to accurately state the applicable law. *Id.*

In his first criticism of the jury instructions, the appellant objected to the district court's inclusion of an instruction addressing the word "flight," contending that at the time he engaged the South Carolina Highway Patrol in a high-speed chase on January 20, 1999, he was not aware that he had been indicted for carjacking the vehicle he was then using in his effort to flee from the officers. Specifically, Lykes has argued that the district court abused its discretion in providing the "flight" instruction because the chase did not originate at a crime scene but was remote in time, occurring approximately three weeks after the carjacking offense.[4] Appellant's argument is unpersuasive.

First, this court has refused to impose an immediacy or proximity requirement in

---

4. The jury was instructed as follows, concerning the appellant's flight from authorities on January 20, 1999:

> You have beard testimony that after the crimes were supposed to have been committed that the defendant fled. If you believe that the defendant fled from the authorities in each instance, then you may consider this conduct along with all the

other evidence in deciding whether the government has proved beyond a reasonable doubt that he committed the crimes charged. This conduct may indicate that he thought he was guilty and that he was trying to avoid punishment. On the other hand, sometimes an innocent person may flee to avoid being arrested or for some other innocent reason.

cases of flight. In *United States v. Touch-stone*, 726 F.2d 1116, 1119–20 (6th Cir. 1984), relied upon by the appellant, this Court noted in *dicta* that proximity may be important where the defendant remained unaware of the charges against him. Yet, the facts of the case *sub judice* leave no question that Lykes knew he was in possession of a vehicle that he had stolen three weeks earlier. He may be presumed to know that charges likely had been filed or that Arnold certainly had reported the theft or her car.

This Court has held that evidence of flight is admissible as consciousness of guilt. *See United States v. Gaitan–Acevedo*, 148 F.3d 577, 588 (6th Cir.), *cert. denied, Crehore v. United States*, 525 U.S. 912, 119 S.Ct. 256, 142 L.Ed.2d 210 (1998), *reh. denied.*, 525 U.S. 998, 119 S.Ct. 467, 142 L.Ed.2d 420; *see also United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir.1989). In *Dillon,* the Court stated that the probative value of flight evidence

depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

J.A. at 302–03. Overruling Lykes's objection to the instruction, the district court found it appropriate because the appellant was in possession of a vehicle that he had carjacked when he fled from the authorities. J.A. 294–96.

5. The court instructed the jury as follows:
You have heard testimony that the defendant had possession of some property that was recently stolen. If you believe that the defendant had possession of this property, you may consider this along with all the other evidence in deciding whether the de-

*Id.* at 1127 (*quoting United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.), *cert. denied* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978)). In the instant case, the district court employed this four-prong analysis to deny the defendant's motion, finding

it could be inferred that the defendant knew that he was in trouble with the law, and his trouble would be immediate if he was caught driving the stolen vehicles. The fact that the flight occurred some weeks after the carjacking is not as probative as the fact that the had to have known he was driving a stolen vehicle when officers attempted to stop him.

The district court properly concluded that Lykes, knowing that he was in possession of the stolen vehicle, fled from the officers in South Carolina.

■ The appellant has also urged this court to find that the district court erred in instructing the jury as to stolen property, contending that the only property to which the instruction referred was the vehicle taken from June Arnold on January 1, 1999.[5] The defendant averred that by giving the instruction, the court improperly implied to the jury that it believed the vehicle in question had been stolen rather than, as appellant has contended, "borrowed."

Lykes has argued that a stolen property instruction was unnecessary because the

fendant stole the property, but the longer the period of time between the theft and his possession, the less weight you should give to this evidence. *You do not have to draw any conclusion from the defendant's possession of the property.* You may still have reasonable doubts based on all of the other evidence. Remember, that the burden is always on the government to prove beyond a reasonable doubt that the defendant committed the crime charged.
J.A. at 303 (emphasis added).

fact that he was in possession of the Pontiac Sunfire was not at issue. However, as the Supreme Court noted in *Barnes v. United States,* 412 U.S. 837, 846, n. 9, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the fact that some evidence tends to explain the defendant's possession consistent with innocence does not bar instructing the jury on inferences to be drawn from possession of stolen property.

Moreover, evidence of stolen property, other than the Sunfire, was before the jury. Most notably the barber shears and wallet taken from David Chance and later recovered in the taxi stolen from Raymond Bowling. The district court clearly instructed the jury against the necessity of drawing any conclusions from the appellant's mere possession of that property. Just as clearly, the jurors followed the court's advice carefully, as they acquitted the appellant of stealing the taxi in which the shears and wallet were found. Thus, even assuming, *arguendo,* that this particular instruction was in error, it was, nevertheless, harmless.

### D. Sentencing enhancements.

■ The district court concluded the facts of the instant case proved that when Lykes forced Jones into the Pontiac Sunfire he committed an "abduction" for purposes of applying U.S.S.G. § 2B3.1(b)(4)(A).[6]

For purposes of the four-level sentencing enhancement, the term "abducted" signifies that a victim was forced to accompany an offender to a different location. *See* U.S.S.G. § 1B1.1(a), cmt. n. 1(a); *see also United States v. Sawyer,* No. 96–5252, 1997 WL 608649 (6th Cir. Oct. 1, 1997) (unpublished) (upholding enhancement where defendant compelled the bank teller to leave the bank and accompany him from

inside the bank to the parking lot); *United States v. Jefferson,* 258 F.3d 405 (5th Cir.), *cert denied,* 534 U.S. 967, 122 S.Ct. 379, 151 L.Ed.2d 289 (2001) (finding that forcing a passenger into the car during a carjacking constituted movement to a different location sufficient to support a finding of abduction, even though the victim was able to escape from the vehicle before it had moved very far); *United States v. Nale,* 101 F.3d 1000 (4th Cir.1996) (abduction of passenger of carjacked vehicle delayed notification of police and assisted defendant in making speedier escape, thus warranting four-level increase in sentence if any person was abducted to facilitate commission of offense or to facilitate escape). Additionally, courts will not limit the meaning of force to "physical force," considering instead, that it may "encompass the operation of circumstances that permit no alternative to compliance." *United States v. Copenhaver,* 185 F.3d 178, 181 (3d Cir.1999), *cert. denied,* 528 U.S. 1097, 120 S.Ct. 840, 145 L.Ed.2d 706 (2000) (*quoting United States v. Doubet,* 969 F.2d 341, 347 (7th Cir.1992)).

In objecting to the enhancement, appellant has argued that Lisa Jones was neither taken by force nor used to facilitate the carjacking. The record evidence, however, indicated that Lykes grabbed Jones's shirt and pushed Jones into the vehicle on the driver's side while he climbed in the car immediately after her, effectively preventing her escape. Further, believing that Lykes intended to take her with him to South Carolina against her will, Jones escaped the moving vehicle a short time later only after Lykes slowed to turn onto an entrance ramp to the interstate. The facts supported an application of the enhancement, proving that Lykes abducted Jones by moving her to a different location

---

6. Section 2B3.1(b)(4)(A) states as follows:

If any person was abducted to facilitate commission of the offense or to facilitate escape, increase by 4 levels.

as defined in the sentencing guidelines, which facilitated appellant's escape from the carjacking scene. The defendant may well have believed that taking the vehicle would appear consensual if Jones accompanied him, and thus, Lykes's abduction of Jones may have served to facilitate the commission of his crime, bringing the action within the ambit of § 2B3.1(b)(4)(A).

■ The appellant has also urged this court to reverse a two-level sentencing enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2, contending that insufficient evidence tied the flight from authorities in South Carolina to the carjacking in Knoxville. However, appellant's contention lacks merit.

Section 3C1.2 recommends a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Courts have upheld the enhancement in factual circumstances similar to the case at bar. *See United States v. Williams,* 254 F.3d 44 (2d Cir.2001) (enhancement affirmed where defendant was driving twenty miles over the speed limit while weaving in and out of traffic); *see also United States v. Valdez,* 146 F.3d 547, 554 (8th Cir.1998), *cert. denied, Johnson v. United States,* 525 U.S. 938, 119 S.Ct. 355, 142 L.Ed.2d 293 (1998) (enhancement upheld even though flight occurred on country roads in rural area); *United States v. Chandler,* 12 F.3d 1427, 1433 (7th Cir. 1994) (affirming enhancement where defendant drove through residential subdivision at speeds that ranged from thirty-five to fifty miles per hour).[7]

The evidence clearly indicated that Lykes created an even more egregious situation when he fled in Arnold's Pontiac Sunfire, engaging the South Carolina Highway Patrol in a high-speed chase, involving oncoming traffic on the opposite side of the interstate. Lykes's odyssey concluded only after he sent the vehicle airborne across the northbound lanes of the interstate to a final, fiery collision with the embankment.

Accordingly, this court AFFIRMS the appellant's conviction and sentencing by the district court.

---

**7.** The appellant has cited a Ninth Circuit case, *United States v. Duran,* 37 F.3d 557, 559 (9th Cir.1994), for the proposition that § 3C1.2 "requires a nexus between the crime of conviction and the reckless endangerment." This is a misstatement of the holding in *Duran.* The court actually found that a nexus existed between a bank robbery and a car chase four days later, affirming the application of the reckless endangerment enhancement. Nevertheless, there is no nexus requirement in the language of § 3C1.2, nor is there precedent supporting this speculation.