*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

     *v.*

JEFFREY LYNN DIAL,

     *Defendant-Appellant.*

No. 06-5519

---

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 05-00008—Robert L. Echols, District Judge.

Submitted: November 2, 2007

Decided and Filed: April 9, 2008

Before: SILER, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** J. Daniel Freemon, FREEMON LAW FIRM, Lawrenceburg, Tennessee, for Appellant. Harold B. McDonough, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

     MOORE, J., delivered the opinion of the court, in which GILMAN, J., joined. SILER, J. (p. 6), delivered a separate concurring opinion.

---

**OPINION**

---

     KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Jeffrey Lynn Dial ("Dial") pleaded guilty to one count of conspiracy "to knowingly and intentionally manufacture, distribute, and possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. § 841(a)(1), Joint Appendix ("J.A.") at 15 (Superseding Indictment at 3), and one count of possession of "one or more firearms in furtherance of a drug trafficking crime," in violation of 18 U.S.C. § 2 and 18 U.S.C. § 924(c), J.A. at 17 (Superseding Indictment at 5). The district court sentenced Dial to imprisonment for 97 months and 60 months, on each count respectively, with the terms running consecutively. The district court applied an enhancement to Dial's sentence for reckless endangerment during flight, United States Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.2. On appeal, Dial argues that there must be a nexus between the offense conduct for which he was convicted and the

1

enhancement. For the following reasons, we hold that there is a nexus requirement embedded in § 3C1.2 and **AFFIRM** the district court's judgment.

## I. BACKGROUND

On two separate occasions, April 1 and April 6, 2004, the Tennessee Bureau of Investigation ("TBI") obtained fifty-five grams of methamphetamine through an informant who purchased the drugs from Dial. On April 8, 2004, Agent Darryl Richardson ("Richardson") positioned his unmarked vehicle on a rural dirt road "at a point in the road where [Dial] could see [Richardson's] emergency equipment flashing." J.A. at 174 (Sent. Hr'g, Test. of Richardson at 130:10-11). Richardson stood outside his vehicle wearing a vest that read "POLICE" in large, yellow letters and drew his gun. *Id*. (Sent. Hr'g, Test. of Richardson at 130:11-13). A confidential source had relayed to Richardson that Dial was returning to his home with "a substantial amount of methamphetamine." *Id*. (Sent. Hr'g, Test. of Richardson at 130:2-8). Richardson testified that he was making an "investigatory stop"; he did not have a search or arrest warrant. J.A. at 183 (Sent. Hr'g, Test. of Richardson at 139:1-2, 8-10).

Upon seeing Richardson, Dial stopped his vehicle, looked at Richardson, and then turned his car to proceed up an embankment in order to go around Richardson's vehicle. Dial's vehicle struck Richardson's vehicle on Richardson's left front corner as Dial's vehicle came down the embankment; when Dial's vehicle "grabbed" Richardson's vehicle and began to slowly drag it, Richardson jumped into his vehicle because he feared for his safety. J.A. at 178 (Sent. Hr'g, Test. of Richardson at 134:4-14). After a short movement, the two cars disengaged, and Dial left the scene at a high rate of speed; Richardson testified that he did not immediately pursue Dial because Dial had left the area before Richardson "developed or grasped [his] wits." J.A. at 180 (Sent. Hr'g, Test. of Richardson at 136:3-5). Richardson's vehicle had some damage to the "front driver's side fender and light." J.A. at 179 (Sent. Hr'g, Test. of Richardson at 135:2-4). By the time Richardson located Dial's car shortly afterwards, Dial had abandoned it in the woods.

On April 8, 2004, shortly after the encounter between Richardson and Dial, agents of TBI obtained and executed a search warrant on Dial's residence; they found several firearms and a small amount of methamphetamine. On May 11, 2004, working with an informant again, TBI agents obtained marijuana and methamphetamine from Dial at his residence.

A grand jury indicted Dial on March 23, 2005. Officers arrested Dial on April 20, 2005. The government filed a superseding indictment on June 29, 2005. Dial pleaded guilty to two counts on December 7, 2005. The presentence report indicated that the parties "agree[d] to disagree" as to whether a two-level enhancement should apply to Dial pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight. J.A. at 236 (PSR at ¶ 11(iii)). On March 27, 2006, after hearing testimony at the sentencing hearing related to the enhancement for reckless endangerment during flight, the district court applied the enhancement and sentenced Dial to a total of 157 months of imprisonment; Dial filed a timely appeal.

## II. ENHANCEMENT FOR RECKLESS ENDANGERMENT DURING FLIGHT

### A. Standard of Review

"[We] review[ ] the district court's application of the United States Sentencing Guidelines de novo and the district court's findings of fact at sentencing for clear error." *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007) (quoting *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002)). Because the "question of what constitutes endangerment is a mixed question of law and fact . . . [that] is highly fact-based," we give "significant deference to the district court." *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005).

## B. Analysis

Dial raises one issue on appeal: whether the district court erred when it determined that a two-level enhancement for reckless endangerment during flight applied to him. When determining a defendant's sentence, the district court first ascertains the base offense level and then applies adjustments (if any) related to obstruction of justice. The United States Sentencing Guidelines ("the Guidelines") include an obstruction-of-justice adjustment that states the following: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2 (2006).

The courts look to general principles stated in the Guidelines when determining if an enhancement, such as § 3C1.2, should apply. In this case, the relevant-conduct provision, U.S.S.G. § 1B1.3, is particularly important. Section 1B1.3 provides in pertinent part:

> (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, . . . adjustments in Chapter Three[] shall be determined on the basis of the following:
>> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or *in the course of attempting to avoid detection or responsibility for that offense*. . . .

U.S.S.G. § 1B1.3(a) (emphasis added).

The district court held that the two-level enhancement under § 3C1.2 for reckless endangerment during flight applied, based on the events of April 8, 2004, because Richardson testified that he feared for his safety and that an informant had told Richardson that Dial would have drugs in his car at that time. J.A. at 204-05 (Sent. Hr'g Tr. at 160-61). Dial argues that the enhancement should apply only when there is a "nexus between" the offense of conviction and the reckless endangerment during flight. Appellant Br. at 15-16. Dial argues that there was not a nexus between his methamphetamine and firearm convictions and his avoidance of Richardson on the rural road. He argues that there were no overt acts or alleged transactions in furtherance of the conspiracy to distribute methamphetamine that occurred on the day that he drove up an embankment to go around Richardson's vehicle. Finally, Dial argues that there was no risk of death or serious bodily injury to anyone when he drove down the embankment.

Only the United States Court of Appeals for the Fifth Circuit has addressed in detail the issue of whether there must be a nexus between the crime of conviction and any reckless endangerment during flight in order to enhance a defendant's sentence under § 3C1.2.[1] In *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005), the Fifth Circuit held that there is a nexus requirement embedded in § 3C1.2 because enhancements should be added pursuant to the general principles of the Guidelines. *Southerland*, 405 F.3d at 268. Specifically, § 1B1.3(a) instructs that adjustments to offense levels should be made when there is a connection between the act or omission at issue (such as reckless flight) and the underlying offense of conviction. However, *Southerland* did not require the government "to demonstrate that the underlying offense *caused* either the reckless endangerment during flight or the flight itself"; the government needed to show only "that a sufficient nexus" existed "between the underlying offense and the reckless flight." *Id.* (emphasis

---

[1]The Ninth Circuit assumed without deciding that § 3C1.2 had a nexus requirement because the government did not disagree with the idea that such a requirement could exist. *United States v. Duran*, 37 F.3d 557, 559-60 (9th Cir. 1994) ("Because the government does not contest the nexus requirement, we will assume without so holding that U.S.S.G. § 3C1.2 requires a nexus between the crime of conviction and the reckless endangerment.").

added). *Southerland* developed a five-part test for determining if a § 3C1.2 enhancement should apply to a defendant:

> [T]he government must show that the defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

*Id.* (quoting U.S.S.G. § 1B1.3). When determining whether the flight and the offense of conviction were connected sufficiently for the reckless-endangerment enhancement to apply, the *Southerland* court looked "primarily to any evidence of the defendant's state of mind while fleeing." *Id*. To supplement the inquiry into the defendant's state of mind, the Fifth Circuit "examine[d] the temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction." *Id*. at 269.

Today, we adopt the *Southerland* approach. When applying § 3C1.2, the district court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during flight.[2] *Southerland*, 405 F.3d at 268. The general principles of the Guidelines require sentencing courts to consider acts and omissions *involving* the offense for which the defendant was convicted. *See* U.S.S.G. § 1B1.3. The general principles do not suggest that causation should enter into the analysis. *Id*. Thus, as *Southerland* held, "[t]he government need not demonstrate that the underlying offense caused either the reckless endangerment during flight or the flight itself, only that a sufficient nexus lie between the underlying offense and the reckless flight." *Southerland*, 405 F.3d at 268.

All of the parts of the *Southerland* test are satisfied here. First, the district court implied that Dial was reckless when it found that Dial drove his car in such a manner that Richardson "was in fear of being seriously hurt." J.A. at 205 (Sent. Hr'g Tr. at 161:17). Indeed, Dial conceded in his brief that "[s]uch conduct may be deemed reckless." Appellant Br. at 12. Second, the district court found that Dial created a substantial risk of death or serious bodily injury because Dial's actions could have forced Richardson's car to hit Richardson. Dial drove up an embankment and back down again in order to avoid being stopped by Richardson, who was wearing a vest labeled "POLICE" across the front and standing outside his vehicle in the middle of a rural dirt road. When Dial descended the embankment, his car struck Richardson's vehicle in such a manner that Richardson got back into his vehicle in order to prevent his own vehicle from hitting him. Dial argues that there are insufficient facts to establish that there was substantial risk of death or serious bodily injury for Richardson and attempts to support this argument with the facts that Richardson was not injured and that Richardson's car was not moved a great distance by the impact. In addition, Dial argues that there was "no one present in the vehicle" when Dial began his attempt to go around Richardson's vehicle. Appellant Br. at 13. However, the district court's finding that Richardson justifiably "was in fear of being seriously hurt by his own car being forced into him" by Dial's car is supported by Richardson's testimony at the suppression hearing and at the sentencing hearing. J.A. at 205 (Sent. Hr'g Tr. at 161:16-19). In addition, actual harm to Richardson and the distance of movement of the

---

[2]In *United States v. Lykes*, 71 F. App'x 543 (6th Cir.), *cert. denied*, 540 U.S. 1093 (2003), an unpublished (and therefore non-binding) decision, we stated in a footnote that there was "no nexus requirement in the language of § 3C1.2." *Id*. at 553 n.7. *Lykes* completely failed to consider the general principles embedded in the Guidelines, specifically § 1B1.3; these general principles must be considered in any application of § 3C1.2, despite the fact that they are not part of the "language" of § 3C1.2. In addition, *Lykes*'s observation of the absence of any caselaw addressing the nexus requirement was not a compelling reason to hold that no nexus requirement existed; although *Southerland* had not been decided when we considered *Lykes*, proper review of the Guidelines *as a whole* leads to the conclusion that a nexus must be established between the offense of conviction and the reckless flight in order for an enhancement to be warranted.

vehicle are irrelevant; the provision at issue, § 3C1.2, is not concerned with actual harm, but with the "*substantial risk*" of "serious bodily injury." Also, that Richardson was outside his vehicle when Dial began his attempt to drive around it does not eliminate the substantial risk of serious bodily harm that Richardson faced; in fact, Richardson testified at both the suppression and sentencing hearings that the risk of injury was sufficiently great that he felt unsafe *outside* his vehicle, and he got into his vehicle in order to avoid injury from the vehicles. Based on this evidence, the district court found that Dial created a substantial risk of death or serious bodily injury. The third part of the *Southerland* test—creation of a substantial risk of death or serious bodily injury for another person—is easily met here. Clearly Richardson was the specific other person at risk on these facts.

The fourth part of the *Southerland* test requires that Dial created the risk of bodily harm to Richardson while Dial was fleeing from a law enforcement officer. The district court found that Dial "had reason to believe that" Richardson was standing in the middle of the road near his vehicle with a vest labeled "POLICE" "at least to question him, if not arrest him, at the scene," J.A. at 205 (Sent. Hr'g Tr. at 161:11-13); thus, Dial's decision to evade Richardson by trying to drive around him led the district court to find that Dial "was fleeing from the officer" when he created the risk. *Id*. (Sent. Hr'g Tr. at 161:24-25).

Finally, we conclude that this situation meets the fifth part of the *Southerland* test because there is a sufficient nexus between Dial's flight on April 8, 2004 and his underlying offense for conspiracy to distribute methamphetamine. The district court's findings of fact about Dial's mindset at the time of his flight, supported by the temporal and geographic proximity between the flight and the conspiracy to distribute methamphetamine, lead to this conclusion. Officers had used an informant to purchase methamphetamine from Dial on two occasions in April prior to his encounter with Richardson on April 8, 2004; indeed, an informant had indicated that Dial would be carrying a quantity of methamphetamine down the road when Richardson attempted to stop Dial on April 8. As noted above, the district court found that Dial "had reason to believe that [Richardson] was at least to question him, if not arrest him, at the scene." J.A. at 205 (Sent. Hr'g Tr. at 161:11-13). Thus, Dial's attempt to avoid Richardson (by going around Richardson's vehicle) connected directly to the ongoing methamphetamine conspiracy of which he was a part: Dial was attempting to prevent detection of the ongoing conspiracy. In addition, temporal proximity can be established because Dial's flight on April 8, 2004 fell within the time period of the conspiracy to distribute methamphetamine, which ran from April 2004 to April 20, 2005, to which he pleaded guilty. Finally, there is geographic proximity between the location of the conspiracy and the location of his reckless flight. Thus, although Dial argues that there were no overt acts or alleged transactions in furtherance of the conspiracy on April 8, 2004, it appears that the enhancement should apply because Dial's attempt to go around Richardson's vehicle and his hasty departure were an attempt "to avoid detection or responsibility" for the conspiracy to possess with intent to distribute methamphetamine, an offense for which he was convicted in this case. *See* U.S.S.G. § 1B1.3.

Therefore, we conclude that all parts of the *Southerland* test are satisfied, and the district court did not err in applying the enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2 in calculating Dial's sentence.

## III. CONCLUSION

Because there was a nexus between Dial's flight on April 8, 2004 and his conviction for conspiracy to possess with intent to distribute methamphetamine, and because the other factors required for an enhancement under § 3C1.2 for reckless endangerment during flight were satisfied, we conclude that the district court's decision to apply the enhancement was proper. We **AFFIRM** the district court's judgment.

---

**CONCURRENCE**

---

SILER, Circuit Judge, concurring.  I concur in the majority decision affirming the district court's judgment.  However, I write separately to say that it is not necessary to find a nexus requirement embedded in USSG § 3C1.2.  Thus, I would leave to another day the resolution of that decision.

Like the decision in *United States v. Duran*, 37 F.3d 557, 559-60 (9th Cir. 1994), I would assume without deciding that § 3C1.2 had a nexus requirement.  Obviously, unlike *Duran*, the Government in the case at bar did not agree with the idea that such a requirement could exist.  Nevertheless, I think that the nexus issue could be better resolved in a case in which a district court enhanced a sentence based upon conduct which did not have a nexus between the offense of conviction and the reckless endangerment during flight.  Therefore, I would find that regardless of whether there is a nexus requirement under the Guidelines, the district court properly enhanced the sentence for reckless endangerment.