**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2111
_____

UNITED STATES OF AMERICA

v.

HASSAN PORTER,
                            Appellant.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 07-00483-001)
District Judge: Honorable Gene E. K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2011

Before:   SCIRICA, BARRY, and VANASKIE, <u>Circuit</u> <u>Judges</u>.

(Filed   February 9, 2011 )
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

Appellant Hassan Porter ("Porter") appeals a sentence imposed on him following his guilty plea to one count of escape from federal custody, in violation of 18 U.S.C. § 751(a). Porter argues that the court plainly erred in applying a two-level enhancement for obstruction of justice based upon flight from police, and by counting two of his prior sentences separately for purposes of assessing criminal history points. Because we find that the two-level enhancement for obstruction of justice was plain error, we will reverse on this issue and remand for further proceedings.

I.

Porter has a long and detailed criminal history, dating back to when he was 13 years old. After pleading guilty to conspiracy to traffic in stolen motor vehicles, Porter was sentenced on September 15, 2000, to a term of 59 months' imprisonment. On July 5, 2005, he was transferred to the Luzerne Community Corrections Center in Philadelphia to serve the last 160 days of his sentence in a community setting. After Porter incurred disciplinary violations, the Bureau of Prisons decided that Porter should be returned to a secure facility for the remainder of his sentence. On the day of his transfer, October 11, 2005, Porter escaped from the facility by leaving through an unsecured back door in the kitchen. Porter remained at large for more than two years.

While he was a fugitive from federal authorities, Porter engaged in further criminal activity, including passing counterfeit checks in New Jersey. Warrants were also issued for his arrest based on probation violations.

2

On May 28, 2008, Porter was stopped by Philadelphia police because of a partially obscured vehicle license plate. When he was asked for identification, he fled in his car, causing the passenger-side mirror to strike and injure an officer's shoulder. During the ensuing high-speed chase, Porter struck another car, injuring the motorist. Although Porter got away, he was eventually apprehended on October 16, 2008. He was charged with aggravated assault in connection with the officer's injury, simple assault in connection with the traffic incident, and forgery in connection with the counterfeit checks. He pled guilty to these changes and was sentenced on May 11, 2009 to an aggregate prison term of 11 months and 15 days to 23 months.

In June of 2009, Porter was released to state authorities in New Jersey to answer for a bad check warrant there. He pled guilty and, despite the existence of the federal detainer, was released on bail on July 30, 2009, eluding federal authorities again until September 25, 2009, when he was arrested and brought into federal custody.

When his presentence report was issued on January 12, 2010, Porter's base offense level for his escape was determined to be 13. The probation office, using the 2009 U.S. Sentencing Guidelines Manual, found that he was subject to a two-level enhancement under U.S.S.G.§ 3C1.2 ("Reckless Endangerment During Flight"), based on the events surrounding the high-speed chase. He was also eligible for a two-level reduction for acceptance of responsibility. His prior criminal history, including the offenses committed after his escape, was found to result in 19 criminal history points, yielding a criminal history category of VI and an advisory guideline range of 33 to 41 months.

At his sentencing hearing, there was some dispute concerning whether Porter was in fact subject to the enhancement under § 3C1.2, or whether Porter was instead subject to U.S.S.G. § 3C1.1, which provides a two-level enhancement for willful obstruction of justice. The prosecution, defense, and the court discussed whether Porter satisfied the requirements for the obstruction of justice enhancement. Ultimately, the court decided, "I think it's more appropriate to put [the flight from arrest conduct] under [3]C1.1." (A. 29.) The prosecution responded, "I think that's appropriate," and Porter's counsel responded, "Fine." (A. 29.) The obstruction of justice enhancement was applied. Porter was sentenced to 35 months' imprisonment and three years' supervised release.

### III.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Following *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court must pursue a three-step sequential process: first, determine a defendant's advisory sentencing guidelines range; second, formally rule on departure motions from both parties and state on the record whether a departure is being granted and how that affects the advisory guidelines range; and third, exercise discretion by considering the relevant section 3553(a) factors in imposing the sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

"Our appellate review proceeds in two stages." *Tomko*, 562 F.3d at 567. First, we ensure "'that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as

4

mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If the district court's procedure is satisfactory, we move to stage two, considering the substantive reasonableness of the sentence. *Id.* (citing *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008)).

Porter asserts only procedural error, *i.e.*, the District Court failed to calculate the correct guidelines range of imprisonment. Specifically, Porter argues that the obstruction of justice enhancement was not warranted, and that his correct advisory Guidelines range should be 27 to 33 months, not the 33 to 41 months range used by the District Court. Porter, however, concedes that this issue was not properly preserved in the District Court.

Where, as here, an appellant asserts error that was not raised before the District Court, it is deemed forfeited, and we review for plain error. *United States v. Wood*, 486 F.3d 781, 790 (3d Cir. 2007). In reviewing for plain error, we "may reverse an order or judgment of the district court only if [we] find that (1) an error was committed; (2) the error was plain, that is, it is 'clear' and 'obvious;' and (3) the error 'affected [the defendant's] substantial rights.'" *Id.* at 790 n.6. At our discretion, we correct error that affects substantial rights when not doing so would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

A.

Porter first argues that the District Court committed plain error when it applied a two-level enhancement under U.S.S.G. § 3C1.1. Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. In finding that Porter's conduct was subject to the § 3C1.1 enhancement, the District Court stated:

> [T]he actual crime here is . . . leaving the federal custody . . . and thereafter he impeded the prosecution of that crime by continuing to evade control by federal forces. So I think he does come within 3C1.1(a) and then looking at (b), the conduct related to – did relate to closely related offense at least. . . . [I]n terms of the examples of covered conduct, it seems to the Court that in the commentary or the application notes 4D [and] . . . G . . . are two of those examples.

(A. 25-26.)

Application Note 4(d), which covers the destruction or concealment of material evidence, and Application Note 4(g), which covers providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the offense, are inapposite here. Porter neither concealed material evidence, nor did he provide a materially false statement to a law enforcement officer. Indeed, as the record indicates, he fled without providing a statement or identification.

Significantly, Application Note 5, which sets forth a non-exhaustive list of types of conduct that ordinarily do <u>not</u> warrant an obstruction of justice enhancement, specifically mentions "avoiding or fleeing from arrest . . . ." U.S.S.G. § 3C1.1, app. note 5(d). Consistent with this Application Note, courts have concluded that mere flight to

6

elude arrest does not warrant an enhancement in the offense level for obstruction of justice. *See, e.g., United States v. Bliss*, 430 F.3d 640, 648 (2d Cir. 2005) (finding that where conduct constituted little more than "disappearing to avoid arrest" enhancement was not justified); *United States v. Alpert*, 28 F.3d 1104, 1107 (11th Cir. 1994) ("This circuit and other circuits have recognized that successfully avoiding arrest, alone, does not warrant an enhancement[.]");*United States v. Madera-Gallego*, 945 F.2d 264, 267 (9th Cir. 1991) ("'Mere flight in the immediate aftermath of a crime' is not sufficient to apply the § 3C1.1 adjustment."); *United States v. John*, 935 F.2d 644, 648 (4th Cir. 1991) ("For example, mere flight from an arresting officer would not, by itself, warrant an enhancement."); *United States v. Hagan*, 913 F.2d 1278, 1285 (7th Cir. 1990) (finding mere flight not sufficient for obstruction of justice enhancement); *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990) ("instinctive flight of a suspect" is not covered by § 3C1.1); *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990) ("We therefore hold that mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement.").

In this case, the conduct at issue reflected nothing more than an instinctual desire to avoid capture. There is no evidence that Porter engaged in the kind of conduct that could support the obstruction of justice enhancement, such as destroying or concealing evidence. Accordingly, the obstruction of justice enhancement is inapplicable.

We have held that "an error in application of the Guidelines that results in use of a higher sentencing range should be presumed to affect the defendant's substantial rights." *United States v. Knight*, 266 F.3d 203, 207 (3d Cir. 2001); *see also United States v. Syme*,

7

276 F.3d 131, 158 (3d Cir. 2001) (finding same).  This presumption applies even in the post-*Booker* context.  *See United States v. Wood*, 486 F.3d 781, 790-91 (3d Cir. 2007) (reaching same conclusion in post-*Booker* context).

The Government argues that the error in applying U.S.S.G. § 3C1.1 did not affect Porter's substantial rights because, in any event, the District Court could have applied U.S.S.G. § 3C1.2, which provides for a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer[.]"  U.S.S.G. § 3C1.2.  Indeed, as is apparent from the sentencing transcript, the District Court nearly did so.  (*See* A. 28-29 ("[I]f we were going to go this way with this 3C1.2 . . . . Just the idea that you were in a high speed chase is enough. . . . [W]e're just talking about a single application of two levels here, and what we're talking about is there are many different roads that could be followed without problem to apply those two.").)

The application of § 3C1.2, however, is not so simple.  As a part of Chapter Three of the Sentencing Guidelines, it is subject to U.S.S.G. § 1B1.3, which provides in relevant part that "adjustments in Chapter Three[ ] shall be determined on the basis of the following: . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility *for that offense*."  U.S.S.G. § 1B1.3 (emphasis added).  This requirement has become known as the "nexus test."  *See United States v. Dial*, 524 F.3d 783, 787 (6th Cir. 2008) ("When applying § 3C1.2, the district

8

court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during flight."); *United States v. Southerland*, 405 F.3d 263, 268-69 (5th Cir. 2005) ("In determining whether the flight and the offense of conviction are connected sufficiently, we look primarily to any evidence of the defendant's state of mind while fleeing. . . . [and] we also examine the temporal and geographic proximity of the reckless endangerment during flight to the offense of conviction, as factors that supplement the inquiry into the defendant's state of mind.") *See also United States v. Duran*, 37 F.3d 557, 559-60 (9th Cir. 1994) (assuming without so holding that nexus requirement exists).

In other words, for § 3C1.2 to apply, Porter's "reckless creat[ion] of a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" must have occurred during "the course of attempting to avoid detection or responsibility for [his initial escape]." The District Court did not make findings that allow for our determination of whether the reckless endangerment during flight enhancement is appropriate here. We agree with Porter that this decision should be made in the first instance by the District Court. Accordingly, we will vacate Porter's sentence and remand for re-sentencing. On remand, the District Court shall be free to determine whether the § 3C1.2 enhancement is warranted.

### B.

Porter also argues that the District Court committed plain error when it assessed 19 criminal history points, given that six of those points were for two prior sentences that should have been counted as a single sentence and thus, only 16 points should have been

9

assessed. While the Sentencing Guidelines provide for three criminal history points for each prior sentence of imprisonment exceeding one year and one month, U.S.S.G. § 4A1.1(a), they also indicate that some sentences are to be treated as a single sentence if (1) they were imposed for offenses that were not separated by an intervening arrest and (2) they resulted from offenses contained in the same charging instrument or were imposed on the same day. U.S.S.G. § 4A1.2(a)(2). Because two of Porter's sentences, one for aggravated assault related to the May, 2008, car chase, and one for forgery, were not separated by an intervening arrest and were imposed on the same day, they should be treated as one sentence under the Guidelines.

The Government does not dispute that an error was made in the Guidelines calculation, but points out that the error was harmless. We agree. Even if the sentences were counted as one, the corresponding reduction in criminal history points would result in a criminal history score of 16, which is still well over the 13 points required to place Porter in Category VI.

Porter's argument that the error affected his substantial rights because the judge referenced the criminal history score in sentencing him is unavailing. A careful review of the record reveals that this was only one of many factors considered by the court in imposing its sentence, including Porter's conduct in running away, the totality of his criminal history, the need to impose a sentence commensurate with his crime and its community impact, as well as his remorse, acceptance of responsibility, his desire to assist in another prosecution and his desire to support his children. Accordingly, we find

10

the error harmless.  Nevertheless, we will instruct the District Court on remand to enter the correct criminal history score.

III.

For the foregoing reasons, we will vacate the sentence of the District Court and remand for proceedings not inconsistent with this opinion.

11