**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0328n.06

Case No. 19-1924

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Jun 05, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WILLIAM LAUCHIE CARTER, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE, SUTTON, and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge. Fleeing law enforcement, Carter tossed incriminating evidence, including a loaded semi-automatic pistol, cocaine, and heroin. Police found him hiding in someone's backyard. After Carter pleaded guilty to illegally possessing a firearm, the district court imposed a two-level sentencing enhancement for recklessly creating a substantial risk to others. We affirm.

On a November night, Carter was pulled over for driving without his headlights on. When the officer stepped out of his car, Carter drove away. After exiting the parking lot, Carter drove the wrong way down a one-way street. The officers went down a parallel street to find him. They caught up with Carter just as he and a passenger abandoned the vehicle and fled. The officers set up a perimeter and called in dogs.

As Carter fled the scene on foot, he "discard[ed]" a loaded Glock .45 semiautomatic pistol, along with other incriminating evidence, including a coat containing cocaine, heroin, and a digital scale. R. 23 at 3–4. The dogs tracked Carter down and found him hiding in a residential backyard. After surrendering to the officers, Carter acknowledged that there was something "'out [t]here' that could hurt somebody," and, when asked what it was, answered "a Glock." *Id.* at 4. Retracing their steps, the officers recovered Carter's pistol. They also found 18 grams of heroin in individual baggies, over 11 grams of cocaine base, drug packaging materials, a digital scale, and $140.

The government charged Carter with possession with intent to distribute controlled substances and with illegally possessing a firearm as a convicted felon. 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 922(g)(1). Carter pleaded guilty to the felon-in-possession charge. In exchange, the government (1) dropped the drug distribution charge, (2) agreed to accept a two-level sentence reduction for acceptance of responsibility, and (3) agreed to accept a one-level reduction because Carter made a timely guilty plea.

The pre-sentence report recommended a two-level enhancement for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Carter objected, arguing that there was no proof of any cars or pedestrians in the area at the time of the car chase, and that he had accidentally dropped the gun, not intentionally discarded it. The court thought the car chase alone sufficed for the enhancement. "[I]t's pretty clear," the court remarked, "that anybody who is driving the wrong way on a one-way street in a residential area is imperiling anybody who might be driving the right way." R. 44 at 9. The court also thought that Carter intentionally "discard[ed] [] the gun." *Id.* The enhancement put the guidelines range at 51 to 63 months. *Id.*

In picking a sentence, the court explained that Carter's crime was "somewhat more serious" than a typical felon-in-possession charge given his dangerous flight from police and that his criminal history "involved gun violence." *Id.* at 14–15. Despite that, in consideration of Carter's troubled upbringing and difficult circumstances, the court imposed a sentence at the bottom of the guidelines range: 51 months.

On appeal, Carter renews his challenge to the reckless-endangerment enhancement. The enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. What constitutes reckless endangerment is "highly fact-based," which means "we give significant deference to the district court." *United States v. Dial*, 524 F.3d 783, 785 (6th Cir. 2008).

We need not decide whether the car chase sufficed as a predicate for the reckless-endangerment enhancement. Discarding the loaded firearm was sufficient by itself. Carter tossed away a loaded semi-automatic pistol, creating a risk that someone (perhaps a child) could find it and misuse it. Carter acknowledged that the gun "could hurt somebody." R. 23 at 4. Precedent backs up this conclusion. "The idea that a discarded gun," especially a loaded gun, "creates a substantial risk of serious bodily harm to another person is well supported by caselaw." *United States v. Brooks*, 763 F. App'x 434, 440 (6th Cir. 2019) (collecting cases); *see, e.g.*, *United States v. Stafford*, 721 F.3d 380, 401–03 (6th Cir. 2013); *United States v. May*, 430 F. App'x 520, 526–27 (6th Cir. 2011); *United States v. Howard*, 301 F. App'x 446, 449 (6th Cir. 2008).

Carter counters that *Stafford* supports his challenge. But that case *affirmed* a reckless-endangerment enhancement. *Stafford*, 721 F.3d at 403. Although that defendant created more danger by throwing a gun into an area with heavy foot traffic, the case does not show that Carter's

form of endangerment escapes the guideline's scope. *Id.* at 402–03. The comparison at any rate is not as favorable to Carter as he suggests. In *Stafford* "there was no evidence" of nearby "residential housing." *Id.* at 402.

Carter also argues that the district court unduly speculated about what might occur if another person were present. But thinking about the harm that behavior could lead to is just what a risk-focused provision like § 3C1.2 calls for. Courts have repeatedly rejected the idea that the government needs to show "actual harm" for the enhancement to apply. *Dial*, 524 F.3d at 788. It is enough that the risk is meaningful because other people are there. *See, e.g.*, *Stafford*, 721 F.3d at 403. A residential neighborhood fits that bill. *See United States v. Tasaki*, 510 F. App'x 441, 444–45 (6th Cir. 2013); *May*, 430 F. App'x at 526–27.

Carter adds that he inadvertently dropped the gun, making him negligent at worst. But the record confirms that Carter intentionally discarded the gun. In the plea agreement, he admitted that he "discard[ed] [the pistol] while fleeing from police." R. 23 at 4. One does not accidentally "discard" something. Carter also told officers he grabbed the gun "to get rid of it because he knew the police would find the car." R. 34 at 6. Confirming the point, Carter took the same approach with other incriminating evidence. He intentionally tossed his coat with cocaine, heroin, drug scales, drug packaging materials, and money inside it—never claiming that he inadvertently dropped all of that too. The district court's finding on this score is not wrong, much less clearly erroneous. *See United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000).

We affirm.

4