**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0467n.06

No. 08-1219

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 07, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| TIMOTHY POPE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SILER, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. A jury found Timothy Pope guilty of conspiring to distribute more than 5 grams of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii). The district court sentenced Pope to 288 months in prison. Pope appeals, arguing that (1) the district court erred by denying his motion for judgment of acquittal because the evidence insufficiently supports the conviction; (2) the district court abused its discretion in denying his motion for a new trial; and (3) his below-Guidelines sentence violates procedural and substantive reasonableness.

I.

Law enforcement in Kalamazoo, Michigan targeted longtime Pope associate Ervin Fance as part of a drug investigation. To facilitate this investigation, the authorities enlisted Susan Peake as an informant. Peake executed several controlled purchases of crack cocaine from Fance. Using

Peake as the buyer, the police planned to conduct a "buy-bust" on December 12, 2006. Peake telephoned Fance, ordered $350 of crack cocaine, and arranged for delivery. Pope drove Fance to the arranged meeting place. When Peake entered the vehicle, Pope handed her the drugs and she gave the money to Fance. Seeing the police moving in to conduct the bust, Pope drove off, with Peake barely escaping from the vehicle before it sped away. Pope led the police on a chase through residential streets under rainy conditions in mid-afternoon. The police eventually stopped the car, ordered the occupants out at gunpoint, and arrested Fance (but not Pope) at the scene.

On June 13, 2007, a grand jury in the Western District of Michigan indicted Pope and Fance, charging them with conspiring to distribute more than 5 grams of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii). On September 14, 2007, the government filed a supplemental information notifying Pope that it sought an increased penalty due to his prior felony drug convictions. A jury found Pope guilty and the district court sentenced him to 288 months' incarceration.

A.      Pope's Trial

Fance and Peake testified at Pope's trial. According to Fance, he supplied Pope with 4.5 ounces of powder cocaine, which Pope converted into crack cocaine. Pope and Fance spent December 12 together, and contemplated going Christmas shopping. When Peake called Fance and asked for $350 worth of crack cocaine, Fance asked Pope to supply the drugs because he had none available. Pope agreed and went to retrieve the crack. They reunited at Fance's girlfriend's house,

and then left to meet Peake, with Pope driving. They stopped on the way for Pope to deliver some cocaine to another customer. When they arrived at the meeting place, Fance accepted the money from Peake, and Pope handed her the drugs.

During Peake's testimony, she initially denied telling government agents that she had been involved in drug deals with Pope prior to December 12, 2006. She first stated that while Pope had been present during her interactions with Fance, he did not deliver crack cocaine to her. The government completed its direct examination of Peake just before a lunch break. During the recess, agents met with Peake and told her not to be so nervous and to simply tell the truth. On redirect, the prosecutor again asked whether Pope sold Peake drugs prior to December 12, 2006. The defense objected to the question as exceeding the scope of cross-examination, but the judge allowed the inquiry. Peake explained that the government's earlier questions confused her. She clarified that while she always ordered from Fance and delivered the money to him, Pope often handed her the drugs.

The jury found Pope guilty of the offense charged in the indictment. During trial, defense counsel moved for a mistrial and for a directed verdict. After the verdict, counsel refined these motions through written submissions, filing a second motion for acquittal and a motion for a new trial. The district court denied both motions.

B.      Pope's Sentence

The Presentence Report ("PSR") recommended a two-level enhancement pursuant to U.S.S.G. § 3C1.2 for recklessly endangering the public during Pope's flight from the police. And citing his criminal past, the PSR recommended classifying Pope as a career offender. The PSR also suggested a two-level reduction under § 3B1.2 for Pope's "mitigating" role in the offense. Relying on the PSR, the court calculated Pope's adjusted offense level as 37 and his criminal history category as VI, yielding a Guidelines range of 360 months to life imprisonment.

The district court declined to use the career offender guideline for the criminal history calculation and instead scored Pope's actual criminal history. The revised calculation produced a criminal history category V and yielded a Guidelines range of 324 to 405 months. The court adhered to the two-level § 3B1.2 reduction recommended in the PSR, finding that it accounted for Pope's minor role in the offense, but viewed a further reduction as unwarranted. The court rejected Pope's argument against the § 3C1.2 enhancement, as well as his contention that the supplemental information was defective. The district court considered the factors set forth in 18 U.S.C. § 3553(a) and, in sentencing Pope to 288 months' imprisonment, varied downward from the sentencing range advised by the Guidelines.

## II.

By claiming that the district court erred in denying his motion for acquittal, Pope challenges

the sufficiency of the evidence presented at trial. A defendant mounting a sufficiency challenge bears a "heavy burden," *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (quoting *United States v. Soto*, 716 F.2d 989, 991 (2d Cir. 1983)), because he must show that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). An agreement to violate the drug laws need not be express or formal; "[a] tacit or mutual understanding among the parties is sufficient." *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994). "But the evidence must nevertheless demonstrate that the defendant had knowledge of the conspiracy's object and consciously committed himself to the furtherance of that object." *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006). "[M]ere association with conspirators is not enough," *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007), but "once the existence [of] a conspiracy is shown, the evidence linking an individual to that conspiracy need only be slight," *Caver*, 470 F.3d at 233.

Pope maintains that the evidence presented by the government does not suffice because it established nothing more than his "mere association" with Fance and his presence on the single

occasion when Peake got into the car to buy crack cocaine from Fance.  He impugns the testimony of the government's witnesses for their long histories in the drug trade and their alleged motivations to lie.

Pope's sufficiency challenge overlooks the testimony of Fance and Peake, the government's principal witnesses.  Their testimony established more than a "mere association" between conspirators.  It also established more than a single transaction.  Fance testified that he provided several ounces of powder cocaine to Pope, which Pope converted into crack cocaine.  When Peake called asking for crack cocaine, Fance did not have any; Pope did, and agreed to supply it.  They arranged a meeting, and on the way, Pope stopped and sold drugs to another individual.  When they arrived at the designated location, Peake got in the car, gave the money to Fance, and Pope handed her the drugs.  Both Fance and Peake testified that Pope participated in prior drug deals involving Peake.

Pope submitted no contrary evidence on any of these points.  Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, a reasonable jury could have found that Pope committed each of the required elements of a conspiracy to distribute crack cocaine.

Pope's remaining arguments—that Fance was a drug dealer cooperating with the government, and Peake was a drug user who changed her testimony after conferring with government agents—all relate to credibility.  At this stage of review, "all credibility issues are to be resolved in favor of the

jury's verdict." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). The jury believed the government's witnesses, and "[s]ufficiency-of-the-evidence appeals are no place for arguments regarding a government witness's lack of credibility." *United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir. 2000) (internal quotation marks and citations omitted). Sufficient evidence supported the jury's verdict, and the district court therefore did not err in denying Pope's motion for acquittal.

III.

This court reviews a district court's denial of a motion for mistrial for abuse of discretion. *United States v. Davis*, 514 F.3d 596, 613 (6th Cir.), *cert. denied*, 129 S. Ct. 57 (2008). On appeal, Pope presents four claims of error relating to the denial of his motion for a new trial.

A.      Witness Sequestration Agreement

Pope asserts that when government agents met with Peake during a break they coached her into changing key parts of her testimony, violating either a witness sequestration order or the parties' private witness sequestration agreement, and thereby prejudicing the defense and entitling Pope to a new trial. The government correctly notes that the district court never entered a witness sequestration order, but concedes that "[a]t some point in time during the trial," it privately agreed with defense counsel to sequester witnesses. The agreement was "not necessarily" reached before Peake testified. In any event, the government contends that the agents' conduct was proper.

Federal Rule of Evidence 615 provides for sequestering witnesses, thereby "preclud[ing] coaching or the influencing of a witness' testimony by another witness." *United States v. Rugiero*, 20 F.3d 1387, 1392 (6th Cir. 1994). Even when a sequestration order violation occurs, courts do not automatically bar the affected testimony. *United States v. Solorio*, 337 F.3d 580, 593 (6th Cir. 2003). The district court retains discretion to exclude or allow the testimony and, because exclusion is a drastic remedy, a party will only receive a new trial by demonstrating that the error prejudiced its right to a fair trial. *Id.* at 593–94.

While considerable doubt exists as to whether Rule 615 applies to out-of-court meetings like the one between Peake and the government agents, and circuits have split on the question, *see id.* at 592, we need not resolve the issue here. Even if we assume that the rule applies, Pope fails to establish a violation.

Pope's assertion that government agents improperly influenced Peake's testimony finds no support in the record. Peake admitted meeting with the government's agents during a break, but she testified that they merely tried to calm her nerves and reminded her to tell the truth. According to Peake, during the meeting, she told the agents that she was confused by some of the questions about her interactions with Pope. The AUSA subsequently attempted to clarify Peake's testimony by alleviating her confusion. No evidence suggests that the government agents used the meeting to coach Peake. Indeed, her post-break testimony corroborated statements she made to investigators during previous interviews, strongly suggesting that the earlier questioning confused her, and that

Pope's claim that he was surprised by the change is unfounded. Nor does the record reveal an attempt to coerce Peake into testifying consistently with the government's witnesses. The case agents with whom she met never testified about the statements Peake made during pre-trial interviews. And while the defense suggests that the government intended its questions to bring Peake's testimony into line with Fance's, Peake testified before Fance, and the record contains no indication that she knew what Fance would say. Thus, Peake was in no position to conform her testimony to that of any other witness.

Moreover, even if the government violated Rule 615, Pope fails to demonstrate prejudice. Exclusion constitutes a severe sanction, making trial courts reluctant to impose it. *See id*. at 593. Here, defense counsel learned immediately of the contact between Peake and the government agents and questioned both Peake and the case agents about the encounter. The defense cross-examined Peake about her change in testimony and commented on it during closing argument. These remedies adequately redressed any potential prejudice. Even if the government violated Rule 615, the district court had discretion to allow Peake's testimony. Without any showing of prejudice to Pope's receipt of a fair trial, no abuse occurred.

B.      Peake's Redirect Examination

Next, Pope contends that the district court abused its discretion by allowing the government to question Peake on redirect regarding matters not addressed on cross-examination. On cross, Pope's counsel did not ask Peake about her interactions with Pope except those that occurred on

December 12, 2006. Nevertheless, after learning that the direct examination confused her, the government revisited Peake's knowledge of Pope's involvement in earlier drug deals. Defense counsel objected, but the district court permitted the questioning to continue.

"The scope of redirect examination is committed to the sound discretion of the court." *United States v. Brown*, 276 F.3d 211, 218 (6th Cir. 2002). "The tradition in the federal courts has been to limit the scope of redirect examination to the subject matter brought out on cross-examination." *United States v. Riggi*, 951 F.2d 1368, 1375 (3d Cir. 1991).

In overruling Pope's objection, the district court explained that because Peake's earlier testimony evinced inconsistencies with statements she made during pre-trial interviews, the government could have recalled the agents to impeach Peake, and then recalled Peake to explain the discrepancies, yielding the same testimony. Rather than require such "superfluous" procedural steps, the district court simply allowed the government to use redirect to let Peake clarify her earlier testimony. The district court noted that the defense "had a full opportunity to explore Peake's inconsistent testimony on recross-examination," and therefore suffered no prejudice. Moreover, nothing showed "that a new trial would be more fair or that Peake would again give inconsistent testimony."

To be sure, Peake's testimony on redirect exceeded the scope of cross, but as the district court noted in its opinion, Federal Rule of Evidence 611 provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so

as to . . . avoid needless consumption of time." The testimony provided on redirect unquestionably was admissible, albeit through an elaborate procedure involving recalling the government agents to impeach Peake, and subsequently recalling Peake to explain the differences. Requiring the prosecution to jump through such procedural hoops would only have wasted time. The net effect was the same, and the change in Peake's testimony was not lost on anyone, but in fact was a focal point of the defense's credibility argument to the jury. Under these circumstances, the decision to allow Peake's redirect testimony fell within the sound exercise of the trial court's broad discretion over evidentiary matters.

## C.     Background Evidence

Pope argues that Fance's testimony regarding the drug deal on the way to meeting Peake was not evidence of conspiracy, but inadmissible character evidence under Federal Rule of Evidence 404(b). The government maintains that this evidence was not "other acts" evidence at all, but instead, as the district court concluded, background evidence that was inextricably intertwined with the charged offense.

Rule 404(b) forbids admitting evidence of "other crimes, wrongs, or acts" to prove the character of a person in order to show action in conformity with that character, but permits the introduction of character evidence for proper purposes, such as proof of motive, intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b). A limited category of "background" or "res gestae" evidence does not violate Rule 404(b). *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

- 11 -

"[B]ackground or res gestae evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Id.* "Proper background evidence has a causal, temporal, or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

The district court articulated six separate reasons for admitting evidence of the drug deal on the way to meeting Peake as background evidence. It explained that:

> (1) the first delivery was a prelude to the delivery to Peake; (2) both deliveries have a close temporal connection because the first delivery occurred shortly in time before the delivery to Peake; (3) the first delivery occurred while en route to the delivery to Peake; (4) both deliveries have a spatial connection because they occurred in fairly close proximity; (5) the first delivery is directly probative of Defendant's mental state and the charged offense; (6) the cocaine base in both deliveries originated from Defendant.

Because Fance's testimony supplied necessary background regarding events that occurred contemporaneously with the offense, the district court correctly refused to grant Pope a new trial on the basis of its introduction. The key events in the conspiracy were Pope's: agreement to use crack cocaine in his possession to fulfill Peake's order on December 12; arranging through Fance to meet with Peake and exchange the drugs for money; driving to the selected location; and completing the transaction by handing the drugs to Peake. The drug sale at issue occurred in the middle of these events, while the conspirators were on their way to complete the sale integral to the conspiracy

charge, and thus bore a close temporal relationship. The drugs involved in both sales came from Pope's supply. The court therefore properly admitted Fance's testimony as background evidence, as it arose from the same events as the charged offense, formed an integral part of Fance's account of what occurred on December 12, and completed the story of the charged offense.

D.      Agent Goodell's Summary of Fance's Interview

Pope claims a witness statement provided by the government materially misrepresented the completeness of the testimony it described. Investigator Sheila Goodell produced the statement at issue after interviewing Fance. Although Fance told Goodell about Pope's drug transaction on the way to the meeting with Peake, Goodell did not mention the incident in the report. The prosecution did not question Goodell about the report during direct examination. According to Pope, he relied upon the alleged "completeness" of Goodell's statement, and was later surprised when Fance testified about the first delivery. Pope asserts that the government's conduct violated its obligations under the Jencks Act, 18 U.S.C. § 3500.

"The Jencks Act requires the government to provide defendants with copies of certain reports and documents after the government witness has testified on direct examination." *United States v. DeFranco*, 30 F.3d 664, 667 (6th Cir. 1994). Pope claims surprise not from anything Goodell said, but from Fance's testimony regarding the first delivery. Goodell's summary only qualifies as Jencks material if the witness—in this case, Fance—affirmatively adopts the statement, *see* 18 U.S.C. § 3500(e)(1); *United States v. Arnold*, 890 F.2d 825, 829 (6th Cir. 1989), or it represents "a

substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement," 18 U.S.C. § 3500(e)(2).

Neither condition applies here. Goodell created the report after the interview, and Fance never saw it. Goodell also testified that she wrote the summary in her own words, not Fance's. And she omitted many of Fance's statements, making her report anything but a verbatim transcript. Thus, the government had no obligation to furnish the defense with Goodell's report, and no Jencks Act violation occurred.

Similarly, Pope's claim that the government misled him into relying upon Goodell's report as a complete statement of Fance's trial testimony finds no support in law or fact. The government provided a copy of the report to the defense purely as a courtesy. Goodell, not Fance, authored the report, and the government never indicated that it contained Fance's entire interview. Pope makes a spurious claim that because the summary contained certain details—e.g., that Fance and Pope planned to go Christmas shopping on December 12—he justifiably relied on it as a complete statement of Fance's testimony. But Pope provides no authority to support this expansive proposition, nor could he. Pope therefore had no reasonable basis for concluding that Goodell's report represented a comprehensive statement of Fance's anticipated trial testimony. In any event, Pope fails to show prejudice. Defense counsel confronted Fance about the first delivery on cross-examination. Counsel also questioned Goodell about why she omitted Fance's statements from the

summary, and seized the opportunity to argue that Goodell acted nefariously in deciding what to include and what to omit. The district court did not abuse its discretion in denying Pope a new trial.

IV.

Pope attacks his sentence on both procedural and substantive grounds. On appeal, reasonableness review governs the district court's sentencing determination. *Gall v. United States*, 128 S. Ct. 586, 594 (2007). We examine procedural and substantive reasonableness for abuse of discretion. *Id.* at 597. "A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009). "In evaluating substantive reasonableness, the Court examines whether the length of the sentence is 'sufficient but not greater than necessary, to comply with the purposes' of sentencing as set forth by Congress in the sentencing statute." *United States v. Recla*, 560 F.3d 539, 549 (6th Cir. 2009) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)). A sentence is substantively unreasonable if "the district court selected the sentence arbitrarily, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Smith*, 510 F.3d 603, 609 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1910 (2008). Sentences that fall within a correctly-calculated Guidelines range enjoy a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382,

389–90 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 68 (2008). We review the district court's

application of the Guidelines de novo, and its findings of facts for clear error. *United States v.*

*Tocco*, 306 F.3d 279, 284 (6th Cir. 2002).

A.      Section 3C1.2 Enhancement

When calculating the advisory Guidelines range, the district court applied a two-level

enhancement pursuant to U.S.S.G. § 3C1.2 because Pope's flight from police recklessly endangered

others. To justify application of a § 3C1.2 enhancement, "the government must show that the

defendant (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another

person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred

during the commission of the offense of conviction, in preparation for that offense, or in the course

of attempting to avoid detection or responsibility for that offense." *United States v. Dial*, 524 F.3d

783, 786 (6th Cir.), *cert. denied*, 129 S. Ct. 232 (2008) (quoting *United States v. Southerland*, 405

F.3d 263, 268 (5th Cir. 2005) (internal quotation marks omitted)). The district court must also "find

a nexus between the offense for which the defendant was convicted and the conduct that involved

reckless endangerment during flight." *Id*. at 787. This decision involves a mixed question of law

and fact that is highly fact-intensive, so "significant deference to the district court is required."

*United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005) (citing *United States v. Ennenga*, 263

F.3d 499, 502 (6th Cir. 2001)).

Pope disputes application of the enhancement, claiming that (1) the required nexus was absent; and (2) the facts did not warrant a finding of recklessness. Both arguments lack merit. Pope fled from law enforcement immediately after completing the drug transaction, and his sole purpose for fleeing was to avoid imminent arrest. The nexus requirement was satisfied. Similarly, Pope's actions readily demonstrate recklessness, as he concedes that he drove off in an attempt to elude several pursuing police vehicles. This ill-advised effort involved speeding on narrow urban streets in rainy conditions, disregarding stop signs, and attempting a U-turn in a parking lot. Pope's behavior threatened serious harm to others, be they innocent bystanders, the pursuing officers, or Pope's passenger. In fact, Peake nearly suffered serious injury when the flight began, as Pope dangerously accelerated before she completely exited the car, knocking her to the ground in the process. Pope's conduct easily supports the § 3C1.2 enhancement.

B.      Supplemental Information

Pope argues that the district court improperly increased the applicable mandatory minimum sentence because the supplemental information filed by the government, which identified Pope's prior felony convictions, failed to reference the proper statute, 21 U.S.C. § 851. He claims that this purported defect deprived him of proper notice that the government intended to seek an enhanced sentence based upon his prior convictions.

When an individual is convicted of violating 21 U.S.C. § 841(a)(1), he faces an enhanced penalty based on certain prior felony drug convictions. 21 U.S.C. § 841(b). Section 851 requires

that the government provide notice to a defendant of its intention to seek an enhanced sentence.

Compliance is mandatory. *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997). This section

"was designed to satisfy the requirements of due process and provide the defendant with 'reasonable

notice and an opportunity to be heard regarding the possibility of an enhanced sentence for

recidivism.'" *Id.* at 489 (quoting *United States v. Belanger*, 970 F.2d 416, 418 (7th Cir. 1992)). The

sufficiency of an information under § 851 is a question of law subject to de novo review. *United*

*States v. Layne*, 192 F.3d 556, 575 (6th Cir. 1999). "Section 851 does not specify the particular form

that notice of enhancement must take." *United States v. Soto*, 8 F. App'x 535, 539 (6th Cir. 2001)

(citations omitted).

The notice filed by the government informed Pope that he faced enhanced penalties pursuant

to 21 U.S.C. § 841(b)(1)(B) due to his five prior felony drug convictions, all of which the notice

specifically identified. Pope does not suggest that he did not receive notice that the government

sought to enhance his sentence based upon his prior convictions, or that he did not understand the

notice. Rather, he argues only that the technical absence from the notice of a specific reference to

21 U.S.C. § 851 renders his sentence procedurally defective. He is mistaken.

*Layne* forecloses Pope's argument. In *Layne*, the defendant asserted that the information was

defective because the government failed to expressly reference § 851. 192 F.3d at 575–76.

Observing that § 851 is "silent on whether the government must actually cite the statute in the

information it files," the court rejected the defendant's argument, emphasizing "'the importance of

interpreting § 851's notice requirements so as to avoid elevating form over substance.'" *Id.* at 576 (quoting *King*, 127 F.3d at 489). "[U]ltimately, a § 851 information is sufficient if it provides reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence." *Id*. Because Pope received reasonable notice and an opportunity to be heard, the supplemental information filed by the government fulfilled the statutory and due process requirements.

C.      Substantive Reasonableness of the Sentence

Pope contests his 288-month sentence as greater than necessary to achieve the § 3553 objectives because it overstates his role in the offense as well as his criminal history and likelihood of recidivisim.

Section 3B1.2 of the Guidelines allows for a downward offense-level adjustment where the defendant is only a minimal or minor participant in the underlying offense. Minimal participation warrants a four-level decrease, and minor participants receive a two-level reduction. If the facts place the defendant's participation level somewhere between "minimal" and "minor," the judge may grant a three-level reduction. U.S.S.G. § 3B1.2. According to the commentary, a "minor" participant is one "who is less culpable than most other participants," while a "minimal" participant is "among the least culpable of those involved." U.S.S.G.§ 3B1.2, app. n. 4–5 (2007). "Whether a defendant is entitled to a downward offense-level adjustment under U.S.S.G. § 3B1.2 'depends heavily on factual determinations, which we review only for clear error.'" *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005) (quoting *Solorio*, 337 F.3d at 601). The defendant bears the

burden of proving entitlement to the reduction by a preponderance of the evidence. *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001).

The district court considered Pope's request for a downward adjustment due to his allegedly minor role in the conspiracy, and in fact granted a two-level reduction, finding that Pope indeed played a "minor" role in the offense. It refused to label his participation "minimal" and grant a further reduction, noting that it was "a close call to give him any adjustment." On appeal, Pope argues that he should have received a three-level reduction because his conduct fell somewhere between minor and minimal.

Pope's argument overlooks both the true extent of his involvement in the offense and our deferential standard of review. In arguing for an even greater reduction, Pope claims he merely drove Fance to the designated location to sell drugs to Peake. But this was a two-person conspiracy, and Fance did not have any crack cocaine with him at the time Peake placed the order. In agreeing to supply Peake with the drugs, Pope furthered the criminal activity. Without him, neither the drug sale to Peake, nor the conspiracy would have occurred. Thus, the district court did not err in granting only a two-level reduction. *See Salgado*, 250 F.3d at 458 ("A defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme, or if his importance in the overall scheme was such as to justify his sentence.").

Pope also maintains that his 288-month sentence is too long despite receiving a substantial downward variance from the correctly-calculated Guidelines sentencing range of 324 to 405 months. Pope argues that the use of the career-offender guideline resulted in a sentence greater than necessary to comply with the purposes of sentencing set forth in § 3553(a). He contends that his sentence failed to take into account his lack of knowledge regarding the offense (which precluded cooperation with authorities), the relatively minor nature of the offenses in his criminal history, the small quantity of drugs involved in the offense, and his difficult childhood and upbringing. He also attacks the use of the career-offender guideline, claiming that the Sentencing Commission abrogated its institutional role by basing the guideline on a desire to impose sentences at or near the statutory maximum rather than on empirical data.

Pope admits that the district court properly classified him as a "career offender" under the Guidelines. Pope had five adult felony convictions, and this was his sixth. The district court was fully cognizant of the effect the career offender guideline had on the applicable sentencing range. Indeed, it exercised its discretion to reduce the severity of the impact by scoring Pope's criminal history as a Category V based upon his actual convictions, rather than automatically classifying him as a Category VI pursuant to the career-offender guideline.

In pronouncing its sentence, the district court addressed each of the § 3553 factors. The court specifically noted the amount of crack cocaine involved in this case, as well as Pope's difficult

childhood. Contrary to Pope's suggestion, the district court found that investigators gave him an opportunity to cooperate, but he chose not to do so.

The Supreme Court's *Gall* decision teaches "that the sentencing process involves an exercise in judgment, not a mathematical proof." *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008). We "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance, and due deference to the sentencing judge's on-the-scene assessment of the competing considerations." *Id.* (internal quotation marks and citations omitted). "[W]hen a district court considers the relevant 3553(a) factors in-depth and reaches a determination that the appropriate sentence varies outside the advisory guidelines range, we are very reluctant to find the sentence unreasonable." *United States v. Kirchhof*, 505 F.3d 409, 414–15 (6th Cir. 2007) (alteration in original) (quoting *United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006)). Here, the district court considered the § 3553(a) factors and incorporated all of Pope's arguments into its determination of the appropriate sentence. Contrary to Pope's suggestion, the record bears no indication that the district court failed to comprehend the full extent of its discretion or viewed the guidelines as anything more than advisory. Indeed, the district court rejected rote application of the career offender guideline and instead scored Pope's actual criminal convictions. Finding that the resultant sentence suggested by the guidelines was "no doubt high," the court granted a substantial downward variance. Pope fails to direct us to any considerations that are so compelling as to require an even shorter sentence. The district court did not abuse its discretion.

In sum, Pope's sentence is reasonable.

V.

We affirm Pope's conviction and sentence.