[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10866
_____

D.C. Docket No. 1:12-cr-00253-JRH-BKE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARL LAMONT BRANDON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 27, 2016)

Before HULL, JILL PRYOR, Circuit Judges, and ROYAL,[*] District Judge.

PER CURIAM:

Carl Brandon appeals his conviction for possession of a firearm by a

convicted felon.  On appeal, Brandon argues that the district court abused its

_____

[*] Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

discretion: (1) in denying his *Batson*[1] motion for failure to establish a prima facie case of discrimination in the prosecution's jury selection process and (2) in denying his motion to suppress and admitting into evidence the testimony of parole officer Kimberly Thomson.  After careful review, and with the benefit of oral argument, we affirm.

In the context of a *Batson* challenge, we review the district court's findings of fact for clear error and errors of law *de novo*.  *See United States v. Williams*, 936 F.2d 1243, 1246 (11th Cir. 1991) ("The selection of a jury is by nature a subjective process which relies heavily on the instincts of the attorneys, the atmosphere in the courtroom, and the reactions of the potential jurors to questioning. . . .  The district court's determination on this issue, therefore, will not be disturbed unless it is clearly erroneous or appears to have been guided by improper principles of law.").

We review a district court's ruling on discovery violations under Federal Rule of Criminal Procedure 16 for abuse of discretion.  *United States v. Burkhalter*, 735 F.2d 1327, 1329 (11th Cir. 1984).  We also review for abuse of discretion a district court's determination that a motion to suppress is untimely.  *See United States v. Milian-Rodriguez*, 828 F.2d 679, 683 (11th Cir. 1987).  But even if abuse of discretion in a discovery violation is found, we will not reverse for harmless error.  *See United States v. Johnson*, 713 F.2d 633, 649 (11th Cir. 1983).

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

2

First, we are unpersuaded by Brandon's claim that the district court abused its discretion when it denied his *Batson* challenge. *Batson* holds that a party may not exercise a peremptory challenge against a juror solely on account of that juror's race. 476 U.S. at 84. To rule on a *Batson* objection, the district court must apply a three-step procedure. *United States v. Hill*, 643 F.3d 807, 837 (11th Cir. 2011). The first step requires the defendant to establish a prima facie case by producing evidence sufficient to support an inference that the prosecutor engaged in racial discrimination in exercising peremptory challenges.[2] *Id.* "In making out a prima facie case, 'the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.' " *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) (quoting *United States v. Young-Bey,* 893 F.2d 178, 180 (8th Cir. 1990)). "No party challenging the opposing party's use of a peremptory strike . . . is entitled to an explanation for that strike, much less to have it disallowed, unless and until a prima facie showing of racial discrimination is made." *United States v. Stewart*, 65 F.3d 918, 925 (11th Cir. 1995).

---

[2] "*Batson*'s second step requires the striking party to offer a race-neutral explanation for its strikes. . . . In the third and final stage, the district court must evaluate the persuasiveness of the proffered reason and determine whether, considering all relevant circumstances, the objector has carried the burden of proving discrimination." *Hill*, 643 F.3d at 837. "[T]he threshold task in considering a *Batson* challenge, for a district court as well as this Court, is to determine whether a *prima facie* case was established. If the answer is no, then the inquiry ceases, and the challenge should be denied." *Cent. Ala. Fair Hous. Ctr. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000).

In this case, Brandon rested his *Batson* challenge on the fact that the government used six out of its total seven strikes, or 85.7%, against African-American venire members. Although this fact would be sufficient to show a "pattern" of strikes under *Batson*, 476 U.S. at 97, to establish a prima facie case Brandon must show that the totality of the circumstances creates an inference of discrimination. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1044 (11th Cir. 2005). In *Ochoa-Vasquez*, we set forth a totality of the circumstances test comprised of the following factors: (1) "whether members of the relevant racial or ethnic group served unchallenged on the jury"; (2) "whether the striker struck all of the relevant racial or ethnic group from the venire, or at least as many as the striker had strikes"; (3) "whether there is a substantial disparity between the percentage of jurors of a particular race or ethnicity struck and the percentage of their representation on the venire"; and (4) "whether there is a substantial disparity between the percentage of jurors of one race [or ethnicity] struck and the percentage of their representation on the jury." *Id.* at 1044-45 (internal quotation marks omitted).

Brandon did not meet the *Ochoa-Vasquez* totality of the circumstances test because he failed to provide the necessary context that would give rise to an inference of discrimination. He highlighted that the government used 85.7% of its strikes on African-American venire members, but that number is insufficient

4

standing alone. As the district court correctly observed, our precedent requires more than pointing to "the bare fact of the removal of certain venirepersons," as Brandon did here. *Allison*, 908 F.2d at 1538 (quoting *Young-Bey,* 893 F.2d at 180). In rejecting Brandon's challenge, the district court considered the totality of the circumstances, including the racial composition of the venire (37.5% African-American) compared with that of the jury (28.6% African-American); that the government did not use all of its available strikes on African-American jurors; that the subject matter of the case was not racially or ethnically sensitive; that the court witnessed no indication during voir dire that the prosecution was making decisions or strikes on the basis of race; and that the defense neglected to make any side-by-side comparisons of selected and struck venire members. We find no reversible error in the district court's conclusion that, under the totality of the circumstances, Brandon failed to make out a prima facie case of a *Batson* violation.

As for Brandon's argument that the government did not provide any race-neutral explanation for the strikes, the government was not required to provide an explanation since the district court had not determined that Brandon had established a prima facie case. Moreover, while Brandon urges us to apply a *de novo* standard of review, we find no error in the district court's understanding or application of the law. Consequently, clear error applies, and the district court did

5

not clearly err in determining that Brandon had not established a prima facie case under *Batson*.

We are also unconvinced by Brandon's argument that the district abused its discretion in denying his motion to suppress and admitting into evidence the testimony of Thomson, the parole officer, who discussed both the contents of an oral statement Brandon made and a written statement summarizing what Brandon said during that same conversation. Our law is clear that a conviction based on a discovery violation will not be vacated unless the appellant demonstrates that the violation prejudiced his substantial rights. *United States v. Rivera*, 944 F.2d 1563, 1566 (11th Cir. 1991). Substantial prejudice exists if the defendant "was unduly surprised and did not have an adequate opportunity to prepare a defense or . . . the mistake had a substantial influence on the jury." *Id.*

Rule 16 requires the government to disclose, upon a defendant's request, "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). Additionally, Rule 16 requires the government to disclose "any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement

exists." *Id.* 16(a)(1)(B)(i).  Rule 16(a)(1) only applies to statements in the possession of the prosecution and does not extend to statements held by a parole officer.  *See United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997) (stating that a written statement possessed by a probation officer would not be "within the possession, custody, or control of the government" for the purposes of Rule 16(a)(1)); *see also United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) (applying the government control analysis to the entirety of Rule 16(a)).[3] However, the prosecutor may not leave a statement in the hands of the parole officer to avoid disclosure.  *Brazel*, 102 F.3d at 1150.

The Jencks Act provides that in a criminal trial, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  The same control analysis used for Rule 16 applies to Jencks materials.  *See United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977).[4]

---

[3] Since we decided *Brazel* and *Jordan*, Rule 16 has been amended to separate Rule 16(a)(1)(A) into 16(a)(1)(A), (B), and (C), but the changes were "intended to be stylistic only." Fed. R. Crim. P. 16 advisory committee's note to 2002 amendment.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before the close of business on September 30, 1981.

Here, regardless of whether the written or oral statements fall under Rule 16(a)(1)(A), Rule 16(a)(1)(B), or the Jencks Act, the record shows that the statements were in the possession of the parole officer.  As a result, the government did not have the control over them necessary to require disclosure under either subsection of Rule 16 or the Jencks Act.  Nor is there any record evidence that the government deliberately left the statements in the hands of the parole officer to avoid disclosure.  Instead, the record reflects that the government had to request that the state declassify the statements so the prosecution could get access to them.  "It is the trial court which must determine if the government acted in good faith with respect to Rule 16."  *United States v. Cannington*, 729 F.2d 702, 712 (11th Cir. 1984).  The district court found that the government acted in good faith and disclosed the information as soon as it was able.  Accordingly, the district court did not abuse its discretion in finding no violation of Rule 16 or the Jencks Act.  Because we find no abuse of discretion, we need not reach the issue of whether the alleged violations prejudiced Brandon's substantial rights.  *See United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007) (holding that the government did not violate Rule 16 and declining to perform an analysis of prejudice to the defendant's substantial rights).

We further note that, even if the statements qualify as Jencks Act material, the government was not required to disclose them until *after* the officer testified,

8

*see* 18 U.S.C. § 3500(a), and the government gave the statements to Brandon as soon as he called his first witness.  As for Brandon's claim that the pretrial order required the government to disclose the statements seven days before trial, the fact remains that the government did not have them in its control until the day of trial.  Thus, the district court did not abuse its discretion in concluding that there was no Jencks Act violation.

The district court also did not abuse its discretion in denying as untimely the motion to suppress.  Rule 12 mandates that all motions to suppress evidence be raised by pretrial motion "if the basis for the motion is then reasonably available." Fed. R. Crim. P. 12(b)(3)(C).  Under Rule 12(c)(3), if a motion to suppress is untimely, the district court may consider the motion if the party shows good cause for the delay.  Failure or inadvertence of counsel to timely file a motion to suppress does not constitute good cause.  *Milian-Rodriguez*, 828 F.2d at 683.

The district court found that defense counsel knew that some conversation between Brandon and the parole officer had taken place, that he was consequently on notice that his client may have made statements to the parole officer, and that with due diligence he could have timely discovered the grounds for the motion to suppress.  Indeed, before trial Brandon filed a motion to suppress the Waiver of Final Hearing form he had signed with the parole officer (indicating that he waived his right to a final parole revocation hearing because he admittedly violated his

parole as a felon in possession of a firearm), as well as any oral statements or admissions to the parole officer;[5] however, he failed to pursue the motion after the government agreed not to use the statements to the parole officer in its case in chief, but reserved the right to do so in rebuttal.  Additionally, after the jury was sworn in, Brandon moved in limine to preclude the prosecution from offering in its case in chief the parole officer's testimony and the contents of her file on him. Under these circumstances, Brandon failed to present good cause why the untimely motion should have been granted.  Nothing required the district court to consider the untimely motion; thus, the court acted within its discretion.  Consequently, any argument Brandon has concerning whether he was properly read his *Miranda* rights before giving his statement is not before us.

    **AFFIRMED**.

---

[5] The motion to suppress also concerned Brandon's statement to the arresting officer, which defense counsel sought to suppress on the ground that, before giving the statement, Brandon was not read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  The court held an evidentiary hearing on the motion to suppress the statement to the arresting officer.  Defense counsel did not argue, and the court did not rule on, the motion to suppress insofar as it concerned statements to the parole officer.