RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

COURTNEY SHEA GILLISPIE,

*Defendant-Appellant*.

No. 18-5894

─────────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:17-cr-00126-1—Joseph M. Hood, District Judge.

Decided and Filed:  July 10, 2019

Before:  ROGERS, GRIFFIN, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Dori H. Thompson, THOMPSON LAW OFFICE, Lexington, Kentucky, for Appellant.  Charles P. Wisdom, Jr., John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

GRIFFIN, Circuit Judge.

Defendant, Courtney Gillispie, appeals the district court's decision to depart upward at sentencing because his crime resulted in significant physical injury to his victim.  Finding no abuse of discretion in the court's sentencing decision, we affirm.

I.

Defendant was indicted on one count of distributing fentanyl in violation of 21 U.S.C. § 841(a)(1). This charge arises out of one sale of fentanyl to Jerry Brice, who had been purchasing heroin from defendant "[o]ff and on, for maybe a year and a half." Admittedly, Brice was not a healthy man. He suffered from hypertension and a mild arrhythmia, tested positive for hepatitis C, and had been an opioid addict for years. In the drug sale in question, Brice purchased from defendant half a gram of what he believed to be heroin, but what turned out to be fentanyl. Brice then took approximately a quarter of that half gram and injected it intravenously. Brice had a stroke and entered a coma; he was discovered unresponsive on his parents' front porch and doses of Narcan were unsuccessful at resuscitating him. He was taken to the hospital and kept in a medically induced coma for over two weeks, but luckily he survived. It was later determined that Brice suffered a subarachnoid hemorrhage and anoxic brain injury causing his brain to lose oxygen. He also suffered liver failure, kidney failure, and heart failure, and only recovered his day-to-day functioning after six months of intensive physical, speech, and occupational therapies.

After Brice awoke from his coma, he spoke with police and identified "Corey" as his drug dealer. Police determined that "Corey" was defendant, and upon questioning he admitted selling Brice the fentanyl. Defendant was charged with distribution of fentanyl as a result. He pleaded guilty to the charge, admitting that he knowingly and intentionally sold fentanyl to Brice.

Defendant's presentence report acknowledged the possibility that the district court could increase his sentence above the authorized range based upon USSG § 5K2.2, which authorizes departures when "significant physical injury result[s]" from the crime. He objected to this portion of the report because the victim had an "extensive and serious history of pre-existing medical conditions" making it likely that the fentanyl he injected was not the sole cause of his overdose and injuries. The parties appeared for sentencing, at which Brice testified about his overdose and resulting ailments. Defendant called Dr. Dave Feola, a doctor of pharmacy, to testify at the hearing. Dr. Feola testified that it was possible Brice's pre-existing health status affected his likelihood of experiencing a drug overdose, and that it was possible that his

condition could have increased the likelihood of overdose symptoms.  Ultimately, the district court concluded that defendant's fentanyl caused Brice's overdose and increased defendant's offense level by six points, from 17 to 23.  This increased defendant's Guidelines range to 51 to 63 months, and the district court sentenced him to the bottom of that range, for a sentence of 51 months.

Defendant now appeals his sentence.

## II.

We review sentencing determinations for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  We similarly review a district court's decision to depart upward from the Guidelines for an abuse of discretion.  *United States v. Robinson*, 892 F.3d 209, 212 (6th Cir. 2018).  And this abuse-of-discretion standard even applies to whether "the [court's] discretion was . . . guided by erroneous legal conclusions."  *Koon v. United States*, 518 U.S. 81, 100 (1996).

## III.

This appeal centers entirely on the interpretation of § 5K2.2 of the United States Sentencing Guidelines.  That section provides, in pertinent part:

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range.  *The extent of the increase ordinarily should depend on . . . the extent to which the injury was intended or knowingly risked.*  When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate.  If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated.

USSG § 5K2.2 (emphasis added).  Defendant does not contest that Brice suffered significant physical injury.  In this regard, the unrebutted testimony at sentencing showed that as a result of injecting the fentanyl he purchased from defendant, Brice: (1) had a stroke; (2) went into a coma for over two weeks; (3) suffered a brain hemorrhage, kidney failure, heart failure, liver failure, and rhabdomyolysis; and (4) had to relearn how to walk and write.  All in all, it took Brice over six months of various therapy treatments to recover most of his functioning.

On appeal, defendant contends that the district court erred by failing to consider Brice's "own choice to engage in the intravenous ingestion of street drugs and the knowing risk that he engaged in." Because § 5K2.2 notes that any departure under this section should take into account "the extent to which the injury was . . . knowingly risked," he argues that it "is not clear as to whether the [Sentencing Commission] is discussing the 'knowing risk' entered into by the victim or the Defendant." Defendant does not cite any support for this argument and, in fact, admits that there is no precedent interpreting this language. But even more problematic for his contention is that it runs headlong into the plain language of the sentencing provision when read as a whole.

It is a fundamental canon of construction that the words of a text must be read in their context and with a view to their place in the overall scheme. *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."). While the language defendant quotes is in the passive voice and specifies no actor, § 5K2.2 clarifies that language's subject only two sentences later: "If . . . *the defendant . . . did not knowingly create the risk of harm*, a less substantial departure would be indicated." USSG § 5K2.2 (emphasis added). In other words, when reading the entire Guidelines provision, it is the defendant's intent or knowing risk—not the victim's—that is relevant.

Furthermore, defendant not only has to overcome this textual barrier but also our deferential standard of review. As noted above, the evidence presented at sentencing clearly established that Brice suffered significant physical injury causing hospitalization, and which could likely have led to death if not for the medical intervention. Given that defendant sold Brice fentanyl that defendant told him was heroin, the district court did not abuse its discretion in determining that defendant knowingly risked this significant physical injury to Brice. *Robinson*, 892 F.3d at 212. His 51-month sentence—falling at the very bottom of the properly scored range—was reasonable and not an abuse of discretion.

IV.

For these reasons, we affirm the judgment of the district court.