NOT RECOMMENDED FOR PUBLICATION
FILE NAME: 21A0100N.06

Case No. 20-1050

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | **FILED** |
| | ) | Feb 24, 2021 |
| *Plaintiff-Appellee*, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JAENICO JOHNSON, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| *Defendant-Appellant*. | ) | |

Before: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which STRANCH and NALBANDIAN, JJ., joined. STRANCH, J. (pp. 5–9), delivered a separate concurring opinion.

**ALICE M. BATCHELDER, Circuit Judge.** In this appeal, Jaenico Johnson challenges two aspects of his criminal conviction and sentence. Finding no error, we AFFIRM.

**I.**

On March 29, 2019, police officers identified a parked car that had been reported stolen, saw two occupants seated within, and, upon their approach, smelled burning marijuana. Johnson was the front-seat passenger, and the officers saw marijuana in the passenger-side doorhandle well. When Johnson got out of the car, an officer asked him if he had anything illegal. Johnson said no, but the officer was suspicious and patted him down, finding a .45 caliber pistol in his waistband. The officer arrested him. The court released him on bond pending state charges.

About a month later, a federal grand jury indicted Johnson as a felon in possession of a firearm and issued a federal arrest warrant. Three days after that, municipal police found Johnson in the drive-thru line at a fast-food restaurant, approached and told him about the federal arrest warrant, and ordered him out of the car. Instead, Johnson fled and escaped arrest.

About three months later, on July 16, 2019, police saw Johnson driving alone and they attempted a traffic stop, but Johnson fled down an alley at high speed. With police pursuing, lights and sirens activated, Johnson crashed his car into a pickup truck and fled on foot, but the police caught him. During the chase, Johnson threw a handgun from the car into a passing yard, but that was not discovered until later and Johnson was not charged with possession of that gun.

Johnson moved the district court to suppress the evidence (the .45 caliber pistol) from the original felon-in-possession charge, but he filed his motion 15 days after the court's motion deadline. In answer to a show-cause order, Johnson's counsel said he had mistakenly thought that he could file the motion any time before the final pretrial conference (i.e., he ignored or overlooked the court's deadline). The court found that reason was not "good cause." Noting that Federal Rule of Criminal Procedure 12(c)(3) permits a court to consider untimely motions "if the party shows good cause," the court found that counsel's mistaken belief was not good cause. Further, the court said that Johnson had not shown that any prejudice would result from the court's denying the motion as untimely. Finding neither cause nor prejudice, the court denied the motion. R. 28.

Johnson pleaded guilty, reserving the right to appeal the denial of the motion to suppress. At sentencing, the court added a two-point enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2, which led to a total offense level of 21 and, with a criminal history category of III, an advisory range of 46-57 months. Johnson had argued that the § 3C1.2 enhancement did not apply because there was an insufficient nexus between the underlying offense and the flight from police four months later. But the court found that Johnson had been informed of the federal arrest warrant in April, whereupon he fled successfully, so he was certainly aware of that warrant at the time of the attempted traffic stop in July when he committed the reckless endangerment during flight. The court found a reasonable inference that he fled because of the federal warrant. R. 48 at 24-25. The court sentenced Johnson to 57 months and Johnson now appeals.

## II.

Johnson argues that the district court erred by denying his motion to suppress the handgun because, as he sees it, the merits of the claim support his motion. But, as the government points out, the district court dismissed the motion because Johnson failed to show good cause to excuse the motion's untimeliness. Johnson does not even address that in this appeal.

Regardless of the merits of Johnson's motion, Johnson has not shown—and cannot show— good cause to excuse the untimeliness. "When a party files an untimely motion in the district court, and the district court finds facts to determine whether the late movant has satisfied the good-cause standard, we review that determination for an abuse of discretion[.]" *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015). Generally, the "[f]ailure or inadvertence of counsel to timely file a motion to suppress does not constitute good cause." *United States v. Brandon*, 636 F. App'x 542, 547 (11th Cir. 2016); *see also United States v. Obiukwu*, 17 F.3d 816, 819 (6th Cir. 1994). Considering Johnson's explanation in the district court, we conclude that his attorney's mistaken belief that he could file the motion whenever he wanted (thereby ignoring the court's express order of a specific motion deadline date) is not justifiable cause. At least, it is not necessarily so, and the district court did not abuse its discretion in finding that it was not.

## III.

Johnson argues that the district court erred by finding a nexus between the underlying offense (felon in possession) in March and the flight from police four months later, in July. He argues that, because he could have fled from the police for any reason at all, some specific evidence was necessary to show that—subjectively—he decided to flee because of the underlying offense. He cites *United States v. Dial*, 524 F.3d 783, 786-87 (6th Cir. 2008), which provides a five-part test for imposing the reckless-endangerment-during-flight enhancement, with the fifth part being that the defendant chose to flee in an attempt to, among other possibilities, "avoid . . . responsibility

for that offense." But *Dial* is explicit that the underlying offense need not cause the reckless flight. *Id.* at 787 ("[T]he government need not demonstrate that the underlying offense caused either the reckless endangerment during flight or the flight itself." (quoting *United States v. Southerland,* 405 F.3d 263, 268 (5th Cir. 2005)). Here, the government proved that Johnson had actual knowledge of the federal arrest warrant. In fact, when Johnson learned of the warrant in April, he fled successfully, so he was certainly aware of that warrant at the time of his flight in July. That is enough to support a finding of a nexus between the warrant and Johnson's flight.

We review a district court's sentencing determinations for an abuse of discretion. *United States v. Gillispie*, 929 F.3d 788, 789 (6th Cir. 2019). The district court did not abuse its discretion in drawing this inference connecting the underlying offense to the later flight from police.

## IV.

We AFFIRM the judgment of the district court.

4

**JANE B. STRANCH, Circuit Judge, concurring.** I agree with my colleagues that our previous decisions addressing good cause for untimely filing a motion and the application of USSG § 3C1.2 should lead to affirmance. I write separately, however, to note a few problematic aspects of the district court's reasoning on both issues.

It is true that a district court is given ample latitude to determine what excuses untimely filing. *See United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010). In unpublished cases, we have required the party seeking to show good cause for an untimely filing to offer "an explanation for both the delay *and* the potential prejudice" to that party if the filing is denied. *United States v. Trujillo-Molina*, 678 F. App'x 335, 338 (6th Cir. 2017); *see also United States v. Gulley*, 780 F. App'x 275, 282 (6th Cir. 2019). Because it appears here that "the failure to timely file occurred as a result of a lawyer's conscious decision not to file a pretrial motion before the deadline," the district court did not abuse its discretion in concluding that Johnson could not "establish good cause." *Walden*, 625 F.3d at 965.

We must, however, keep in mind factors that can distinguish this reasoning. In the analogous context of determining whether excusable neglect exists under Federal Rule of Civil Procedure 60(b)(1), we noted that it is not necessarily inappropriate to penalize a client for the omissions of his attorney. *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002). The basis for this principle is that typically, "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962)) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). That reasoning is not readily applicable when, as here, the client does not choose his counsel—Johnson, who is proceeding in forma pauperis, was represented by court-appointed counsel in the district court (and on appeal).

Our law does not currently extend the Sixth Amendment right to counsel of choice to indigent defendants. *See Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) (plurality opinion); *see generally* Alexis Hoag, *Black on Black Representation*, 96 N.Y.U. L. Rev. (forthcoming 2021) (manuscript at 17–22) (https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3785013) (tracing the history of this rule and advocating for such an extension). In situations like this one, it seems inappropriate to me to hold indigent defendants accountable for the effects of a choice that our law bars them from making.

More troubling to me, however, is that the district court's analysis of the merits of Johnson's late suppression motion employed the wrong legal standard. Were we to reach the district court's determination that denial of the suppression motion as untimely did not prejudice Johnson, I would hold that the district court plainly erred.[1] *See United States v. Ramamoorthy*, 949 F.3d 955, 962, 964 (6th Cir. 2020); *United States v. Simer*, No. 19-3784, --- F. App'x ----, 2020 WL 6689951, at *5 (6th Cir. Nov. 13, 2020) (applying plain error review to a forfeited suppression claim).

As the Government notes, Johnson does not argue that the officers lacked reasonable suspicion to stop and detain him while investigating the stolen car. An officer may stop a person based on reasonable suspicion of criminal activity, but to frisk him for weapons, the officer must reasonably believe he is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009). Indeed, we have recognized that "[t]he Supreme Court has *never* authorized a protective search on anything less than reasonable suspicion that a suspect was armed and dangerous." *United States v. Graham*, 483 F.3d 431, 436 (6th Cir. 2007). The

---

[1] To establish plain error, Johnson would need to show that there was (1) error that was (2) "obvious or clear," (3) "affected [his] substantial rights," and (4) "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner,* 463 F.3d 445, 459 (6th Cir. 2006)).

officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64 (1968). Additionally, "[t]here clearly must be some nexus between the criminal conduct of which the police suspect the defendant and the aim of the protective search." *Graham*, 483 F.3d at 436. This all means that "[a] lawful stop does not necessarily carry with it the authority to conduct a pat-down search." *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005). It is important to not "confuse[] the scope of a frisk, the scope of a search, and the justifications and requirements for each": "[a] police officer may frisk a suspect only if there is reasonable suspicion to believe that the suspect is armed and dangerous." *United States v. Noble*, 762 F.3d 509, 525 n.14 (6th Cir. 2014).

The Government asserts that the officer could have reasonably inferred that Johnson was armed and dangerous based on three facts: "Johnson was a passenger in a stolen vehicle, the car reeked of marijuana, and Johnson appeared extremely nervous as he exited the car." Even if we take these facts together and also view them in the light most favorable to the Government, *see United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006), they do not suffice. In *United States v. Campbell*, 549 F.3d 364, 372–73 (6th Cir. 2008), for instance, we held that a frisk was justified when the car was likely stolen, had tinted windows, "was parked in a secluded, high-crime area," "the passenger had no identification," and a person in the car was "slouched down . . . as if to avoid detection and with his hands out of sight, suggestive of concealing a weapon." Only the first of those indicia was present here. At the time of the events in this case, possession of marijuana was legal in Michigan, albeit with "smoking . . . within the passenger area of a vehicle upon a public way" prohibited. Mich. Comp. Laws § 333.27954(g) (effective Dec. 6, 2018). But neither this potential state offense nor possession and/or consumption of small quantities of otherwise state-sanctioned marijuana has a clear connection to being armed and dangerous. Moreover, assuming for argument's sake that there is a sufficient nexus between stealing a car and being armed in

general, that Johnson was in the passenger seat of the stolen car at an undetermined time after the car was stolen does not conclusively indicate that he was involved in the theft or even knew the car was stolen. And as for Johnson's nervousness:

> We have repeatedly held that "nervousness—even extreme nervousness—'is an unreliable indicator' of someone's dangerousness, 'especially in the context of a traffic stop.'" [*Noble*, 762 F.3d at 522] (quoting *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004)) (collecting cases). It is not uncommon for an individual to "become nervous during a traffic stop, even when they have nothing to hide or fear." [*Richardson*, 385 F.3d at 630–31]. Thus, "while part of the reasonable suspicion analysis," these signs of nervousness "are given little weight." *United States v. Johnson*, 482 F. App'x 137, 145 (6th Cir. 2012).

*United States v. Pedicini*, 804 F. App'x 351, 355 (6th Cir. 2020). On this record, there is an insufficient basis for finding that the officer reasonably believed Johnson was armed and dangerous, as is required to justify a frisk. *See, e.g.*, *United States v. Wilson*, 506 F.3d 488, 496 (6th Cir. 2007) ("In sum, the government can point to no specific and articulable facts to justify the pat-down of Wilson on the basis of a reasonable suspicion that he was armed and dangerous.").

Moreover, the district court's discussion of the merits of Johnson's suppression motion does not distinguish at all between the justification needed for a *Terry* stop and the justification needed for a subsequent pat-down search:

> Taking the facts as portrayed by the defense at face value, the stop of Defendant in this case passes muster in *Terry* on at least a prima facie basis. The officers observed behavior and had other information that created a reasonable suspicion that "criminal activity may be afoot." *Terry*, 392 U.S. at 30. Officers were investigating a report of a stolen vehicle. They found a vehicle matching the description with Defendant inside along with several others. When approaching the vehicle, officers could smell burnt marijuana emanating from the vehicle and saw marijuana in plain view near where Defendant was sitting. All this is as was detailed in the defense motion, and on a prima facie basis supports a *Terry* stop *and pat down* [emphasis added].

In my view, elision of the distinction between the stop and pat-down is obvious or clear error, and an erroneous denial of suppression on that basis would seem to violate a person's substantial rights and generally implicate the validity of the proceeding.

Still, as described above, our cases afford the district court expansive discretion to determine whether good cause existed for filing a suppression motion late. So, despite this otherwise plain error, I cannot say that the district court transgressed that latitude here.

Second, I agree that our decision in *United States v. Dial*, 524 F.3d 783 (6th Cir. 2008), means that the district court did not err in applying USSG § 3C1.2's enhancement for reckless endangerment during a flight from police. Generally, "[t]he district court must find a nexus between the offense for which the defendant was convicted and the conduct that involved reckless endangerment during flight." *Id.* at 787. And often, "temporal and geographic proximity" between the offense and the flight supports finding such a nexus.[2] *Id.* at 788; *see also United States v. Cigarroa-Luna*, 331 F. App'x 385, 387 (6th Cir. 2009).

I highlight, however, that though temporal proximity is not necessarily required, the period of nearly three months that elapsed between the gun possession and Johnson's flight in this case certainly stretches the notion of a nexus. But the district court made "findings of fact about [Johnson's] mindset at the time of his flight," like those we found relevant in *Dial*. 524 F.3d at 788. Though these findings are necessarily speculative to some extent, as Johnson argues, there is no indication in the record that the district court clearly erred in making them. Consequently, *Dial* supports imposition of § 3C1.2 here. In the future, however, we should be cautious not to read this reasoning as weakening the importance of temporal proximity in this type of analysis. In many, even most cases, a three-month gap between offense and flight would militate against finding that the required nexus existed.

With the cautions expressed above, I concur.

---

[2] Consider that our cases applying § 3C1.2 to a flight frequently confront the archetypal situation of driving away from police to avoid imminent arrest after criminal conduct. *See United States v. Dickens*, 748 F. App'x 31, 44 (6th Cir. 2018); *United States v. Woods*, 604 F.3d 286, 289–90, 293 (6th Cir. 2010); *United States v. Pope*, 335 F. App'x 598, 606 (6th Cir. 2009); *Cigarroa-Luna*, 331 F. App'x at 386–87.